SAMUEL M. WILLIAMS v. F. W. CHANDLER AND OTHERS.

A contract by a colonist, whose title was issued on the 4th of April, 1831, made on the 19th of December, 1831, for the sale of his land was void, because made before he had completed the cultivation thereof as required by law.

Nor can the declarations of the vendor, or those claiming under him, or the recitals in deeds executed by them to which the vendee was a stranger, referring to and admitting the execution of said contract, be regarded as evidence of a new contract or ratification of the sale, or a parol sale after the legal inhibition was removed.

The right of the purchaser under such a contract has, in no case, been upheld, unless supported by possession and strong equities independent of the contract.

Recitals in deeds do not operate as estoppels in favor of strangers to the instrument; but only between the parties and privies thereto. And the estoppel only arises in suits founded upon the instrument which contains the recital, or growing out of the transaction in which it is given, and not in other or collateral controversies between the same parties.

An equitable estoppel will be created when a person, by his acts or declarations, designedly induces another to alter his position injuriously to himself; but it only arises when the conduct of the party estopped is fraudulent in its purpose, or injurious in its result.

Where the plaintiff has produced no evidence of title, it is unnecessary to revise the rulings of the court upon the trial; for whether correct or not, they can afford no ground for reversing the judgment.

APPEAL from Fayette.    Tried below before the Hon. James H. Bell.

This suit was brought by the appellant, Samuel M. Williams, against the appellees, F. W. Chandler, C. L. Moore, Lucinda Harper and her husband, T. W. Harper, and J. B. McFarland, administrator of John W. Chandler, for the recovery of the lower half of a league of land granted to John Cook, Sen., and to quiet his title thereto.

On the 5th day of March, 1831, Cook petitioned as a colonist in the colony of Stephen F. Austin, for the league of land known as league No. 6, which had been previously surveyed and selected by him; and on the 4th day of April, 1831, a title was issued to him for it by the commissioner of said colony.   On the 19th of December, 1831, Cook executed to the plaintiff a bond or obligation, reciting the title issued to him for said land; and that " finding himself unable to pay the corresponding dues for the acquisition thereof, such as those of the empresario, of the commissioner, the surveying of the land, the deed and stamp paper, and the price which, as a recognizance, will have to be paid the government, without causing him embarrassment in the maintenance of his family, and in other interests, he has agreed with the citizen, Samuel M. Williams, a citizen of this town, that, in consideration of said Williams having paid and satisfied all of said dues, with the only exception of the said payment which is to be made to the government, in conformity with the 22d article of the colonization law, and which payment said Williams remains bound to satisfy," he bound himself to make said Williams a title to the lower half of said league of land, so soon as by law he should be authorized to alienate the same; and in case he should not confirm the same when, according to law he could do so, he concedes to the judges power to give possession, and execute to said Williams the title for said land.   The bond appears to have been executed in conformity with an agreement between Cook and

the plaintiff, entered into before the grant was extended to Cook, and the dividing line was run between them at the time the original survey of the league was made for Cook in 1830, who subsequently frequently pointed it out as the dividing line between himself and the plaintiff.

Cook went into possession of the league of land and made improvements upon it in 1830, and continued to cultivate it from that time until his death, in the first of year 1837; but subsequent to the execution of the bond to the plaintiff, he made no improvements upon said lower half of the league.

On the 20th day of November, 1836, said Cook made his will, which was after his death probated, in which are the following words, to wit: "I will that my tract of land situated on the Colorado river, and on which I am now living, be divided into two equal parts; and I give and bequeath the upper or north half thereof unto my dear son John Cook; the lower or south moiety I give and bequeath unto my aforesaid cherished wife Anne, who is to have the benefit of the improvements now existing on my said tract of land during her lifetime." And at the time he gave directions for drawing his will, to the party by whom it was written, he stated that the lower half of the league belonged to the plaintiff, and was understood by the party who wrote the will, as referring, in it, alone to the upper half of the league. After his death, the upper or north half of the league was divided between his wife, said Anne Cook, and the guardian of his son, John Cook, Jr., who was a minor, in accordance with the terms of his will; and said Anne subsequently continued in possession of that part of the upper half of the league allotted to her, until her death in 1849; and neither she nor said John Cook, Sen., were ever heard to set up any claim to said lower half of the league, after the execution of said bond of the 19th of December, 1831; but both of them spoke of the land to their neighbors, as the property of the plaintiff, and admitted that it had been conveyed to him by said bond. And in several deeds from said John Cook, Sen., and Anne Cook, to other parties for portions of the upper half of said league, said divisional line, as run when the original survey was made, was referred to and recognized as the dividing line between themselves

and the plaintiff. There was no evidence, however, showing that any contract or agreement, subsequent to said bond of the 19th of December, 1831, for the sale of said land, had ever been made between said Cook and the plaintiff.

As the title of the defendants was not passed upon by the court, it is only necessary to say that they claimed under the heirs of said John and Anne Cook, who first made claim to the land in the fall of 1849.

There was a verdict and judgment for the defendants, from which the plaintiff appealed.

*W. G.° Webb*, for the appellant.—The construction of the bond from Cook to Williams falls under the law of 1825. (Decree No. 16, L. and D., p. 15.)

Art. 27, p. 20, of that law, provides that the contractors and military and those who have purchased lands, "can alienate them at any time, provided the successor obligates himself to cultivate the same *'within'* the same term as was oligatory on the original proprietor, reckoning the term from the date of the primitive titles." By reference to art. 24, we have the *term* referred to fixed by the provision that "the purchaser shall cultivate ✱ ✱ ✱ ✱ *within* six years from the acquisition." It will not be contended that these provisions require that no sale shall take place till the end of six years, nor that it is necessary for the original holder or his widow to cultivate his land for six full years, for it is clear that the meaning of it is that he shall be allowed the six years *within* which to cultivate the land, and that if it is cultivated at any time within the six years the law is fulfilled. This is made evident because the term is to commence at the date of the title, and if a sale is made, the purchaser is to cultivate within the term; so that we understand that if a grantee should under that law have held his title for theee years without cultivation, and then sold, the purchaser would only have the remaining three years in which to cultivate it. The remaining part of the 27th art. provides that the other settlers shall be authorized to alienate their land when they shall have completed the cultivation thereof, and not before.

What is the proper construction to be given to this clause? Does it mean that a sale could not take place for six full years from the date of the title or possession? or does it mean, in connection with other parts of the law, that the six years are allowed within which to cultivate the land, and that if done within that time, the right to sell would immediately attach?

We most respectfully insist that it must mean the latter. Art. 26 provides "that it shall be understood that the new settlers who shall not, within six years from the date of their possessions, have cultivated or occupied, agreeeably to their class, the lands that shall be granted them, have renounced the same." The "date of their possession" here must mean the date at which they went through the old formality of being placed in possession by the commissioner who issued the title; and it is the same as the date of the title, as the formality of entering upon the land and pulling up grass, etc., was gone through with at the time the title issued. Taking for granted that such is its meaning, let us next consider what was required of settlers. One was to *cultivate* and the other *occupy* their lands within six years, and it is evident that either was sufficient to save a forfeiture. If the settler " occupied," or lived on the land, it was not necessary for him to cultivate it; and if he " cultivated," it was not necessary for him to occupy it. And he was allowed six years in which to do one or the other; and, if he failed to do so " within" the six years, he forfeited his land. Such is the obvious meaning of the law. Art. 26 is the only place in which a term is fixed for "new settlers," and the only way in which it is fixed is that a forfeiture take place, if within six years there is neither cultivation or occupation. When we construe the latter part of the 27th art. with the 26th, the conclusion would be that the cultivation must take place within six years, only however because, unless it does, there is a forfeiture; and really, if the latter clause of art. 27 stood by itself, without reference to art. 26, it would follow that whenever a settler completed the cultivation, whether before or after six years, he might have sold his land. But to " complete the cultivation," has a meaning which can only be gathered by the context.

Can it be that it was intended to require a settler to cultivate

his land for six full years? Surely not, for then what was the use of giving him six years, as in Art. 26, to occupy or cultivate it at any time within that time, to save his title? We would construe Art. 26 and the latter clause of Art. 27 thus: that if "within" six years a settler had "completed the cultivation" of his land, he had a right to sell it, and to "complete" the cultivation was not to cultivate it for the whole six years, but the object was that he should make some sign of earnest of becoming a citizen on the land, and this was done when he had made a crop on it.

As to the recitals in the bonds and will executed by Cook, and the recitals in the several deeds executed by his wife, Ann, and by Thompson, his administrator, we may safely quote the language of the learned judge who delivered the opinion in the case of Box v. Lawrence, 14 Tex., 545. He says:

"There was error also in the ruling of the court relative to the effect of the recitals. * * In regard to the recitals in deeds, the general rule is, that all parties to a deed are bound by the recitals therein, which operate as an estoppel, working on the interest in the land, if it be a deed of conveyance, and binding both parties and privies, privies in blood, privies in estate, and privies in law." (P. 556; Bouvier L. Dic. Title Estoppel; 1 Supplement to U. S. Digest, p. 653; S. 52; 1 Greenlf. Ev., $ 189, 194; 5 Barn. & Ald., 682; 2 U. S. Digest, p. 199, § 12 and 14; Stewart v. Butler. 2 Serg. and R., 381; Jackson v. Parkhurst, 9 Wend., 209; Carver v. Jackson, 4 Pet, 1; Crane v. Morris, 6, p. 598; 4 Phil. Ev., 453-6; 3 Phillips, 380.) And the doctrine not only extends to the party making the deed, *but also to all those claiming under him*. (Den. v. Colden, 3 Johns. Cases, p. 178; Stow v. Wise, 7 Conn., 214; McDonald v. King, Coxe's R., 432; 1 Eq. U. S. Digest, p. 428 $ 43.)

It is also clear that a claim which could not be set up by Cook and his wife, after their acts of confirmation, can not now be set up by any one claiming under them; and equally as clear, that a title once acknowledged can not afterwards be disputed. (Duncan *et al.* v. Harden, 4 Johns. R. 202; Adams' Ejec., p. 40.)

*Tate & McFarland*, for appellees.

WHEELER, C. J.—It is beyond question that the contract of sale of the 19th of December, 1831, was in contravention of law, and void, under the decisions of this court, which must be deemed to have settled the law applicable to contracts like the present. (Dismuke v. Griffin, 10 Tex. R., 113; and see Clay v. Cook, 16 Tex. R., 70.)

It is sought to maintain the title of the plaintiff on the ground that the declarations and acts of the vendor, and those claiming under him, evidence a new contract or ratification of the sale, or a parol sale, after the legal inhibition was removed. It is to be observed, however, that the declarations deposed to by the witnesses manifestly had reference to the void contract of sale of the 19th of December, 1831. There is no evidence of any new contract, or of any ratification of the sale, or any transaction between the parties, or of any thing from which such new contract can be fairly inferred, after the removal of the legal inhibition, or the making of the contract of 1831. There is no evidence of any parol sale. The plaintiff is not shown ever to have been in the possession of the land, or ever to have exercised any act of ownership respecting it. There was no acquiescence in his right of a character to affect his vendor; for that implies adverse possession or acts of ownership to which it must have reference. There is no case in which the right of the purchaser under a contract like the present has been upheld, unless supported by possession and strong equities independently of the contract. (Hunt v. Turner, 9 Tex. R., 385; Clay v. Cook, 16 Tex. R., 70.) The plaintiff's case can derive aid from no such equities as the decisions of this court have recognized as sufficient to entitle a vendee to relief; for there is a total absence of those circumstances from which the equity has been held to arise. His case rests upon the illegal contract, which can derive no support from the oft-repeated admissions of it. These can not impart to it validity. They can amount to no more than confirmatory proof of its existence, which was unnecessary and unavailing. There is no decision of this

Williams v. Chandler.

court, and no principle which would warrant the court to ascribe to these oral declarations the effect which is claimed for them.

The doctrine of estoppels, invoked by the plaintiff's counsel, manifestly has no application to his case. Recitals in deeds operate as estoppels only between the parties to the deed and privies. They do not operate a conclusion or estoppels in favor of a stranger to the instrument, any more than does a record operate an estoppel in favor of or against one who was no party to the record. Nothing is better settled than that a special averment or recital in a deed or instrument under seal is conclusive between the parties and privies, against the party by whom it is made, in the course of the transaction in which it is given. But this rule must be taken with the qualification that the estoppel by an admission under seal only arises in suits founded upon the instrument which contains the recital, or growing out of the transaction in which it is given, and not in other and collateral controversies, even between the same parties. (Carpenter v. Butler, 8 Mee. & W., 206; 2 Sm. L. C., 579, 4th Am. edit.; and see the notes to the leading case of Trevivan v. Lawrence, Id., 435; and 4 Kent's Com., 260, and notes for the law of estoppels.)

An equitable estoppel will be created where a person by his acts or declarations designedly induces another to alter his position injuriously to himself. It arises only when the conduct of the party estopped is fraudulent in its purpose, or injurious in its result. Where one, by his words or conduct, designedly causes another to believe in the existence of a certain state of things, and induces him to act on that belief, the former is concluded from averring against the latter a different state of things as existing at the same time. Nothing of the kind is pretended in the present case. To the recitals in question, and the declarations deposed to by the witness, which are relied on as evidence of title in the plaintiff, he was a stranger. He is not shown to have had any knowledge of, much less to have been influenced in his conduct by them. They were transactions between third persons, having no privity or connexion with the plaintiff—*res inter alios*—which could have no influence upon his rights. He was wholly unaffected by them. They constitute no evidence of title in the

plaintiff, and cannot operate in his favor to give title by way of estoppel upon the defendants.

As the plaintiff has produced no evidence of title which the court can recognize, to enable him to maintain the action, it does not become necessary to revise the rulings of the court upon the trial. The plaintiff has sustained no injury by any of the rulings of which he complains. Whether correct or not in the abstract, is immaterial; they have had no influence upon the result of the trial, and can afford no ground for reversing the judgment. It is therefore affirmed.

Judgment affirmed.

Bell, J., having presided on the trial in the court below, did not sit in this case.