HENRY CONROY ET AL. V. JOSEPH R. SHARMAN ET AL.

Decided January 5, 1911.

**1.—Husband and Wife—Deed to Wife—Separate Estate—Evidence.**

The issue being whether or not land conveyed to the wife was her separate estate, the deed containing no apt words to that effect, testimony as to the declarations and statements of the wife that the land was her separate property, considered, and held admissible over objections that said declarations and statements were "self-serving, hearsay and immaterial," were made privately and were not notorious; and "that none of the plaintiffs (adverse claimants) or their ancestors, or those in privity with them, were present or given a chance to deny the statements, and that such statements were never repeated to them or in their presence, and said statements were long after the acquisition of the property, which is presumed to be community property, and long after the death of the grantee."

**2.—Trial—Improper Evidence—Harmless Error.**

The admission of improper evidence becomes harmless when other evidence to the same effect is admitted without objection; also when no other verdict than the one rendered could have been rendered under the undisputed facts.

Error from the District Court of Harris County.   Tried below before Hon. Chas. E. Ashe.

*S. H. Brashear, J. W. Lockett,* and *J. A. Camp,* for plaintiffs in error. —The court erred in permitting the witnesses to testify, over the objections of plaintiffs and interveners, to the conversations with and statements by and hearsay self-serving declarations and statements of Mrs.

Harriet C. Sharman. Rev. Stats., art. 2302; Siebert v. Lott, 20 Texas Civ. App., 193, 49 S. W., 783; Gilbert v. Odum, 69 Texas, 673; Clements v. Maury, 110 S. W., 188. Where a deed is taken in the name of the wife during coverture, and does not show upon its face that the property is paid for with her separate funds, it is presumed that the property is community estate, and the burden is on the party asserting the contrary to trace the separate means of the wife into the purchase of the land, and the law requires that this shall be done by clear and satisfactory evidence. King v. Gilleland, 60 Texas, 274; Peet v. Railway Co., 70 Texas, 528; Zorn v. Tarver, 45 Texas, 521; Braden v. Gose, 57 Texas, 41; Stiles v. Japhet, 84 Texas, 93.

*Hutcheson & Hutcheson, Ira P. Jones, J. E. Walton, Guy Graham, E. I. Kendrick,* and *A. R. and W. P. Hamblen,* for defendants in error. —That the testimony was admissible: Brewer v. Cochran, 99 S. W. 1033; Frugia v. Trueheart, 106 S. W., 741-42. That other evidence of the same kind which had been previously excluded, coming in without objection, cures the error in admission: Hammon v. Decker, 102 S. W. 454; Rice v. Dewberry, 93 S. W., 721. On the issue whether there were any errors or not, the judgment below must stand: Hardin v. Jones, 68 S. W., 836.

PLEASANTS, CHIEF JUSTICE.—This is an action of trespass to try title brought by plaintiffs in error against defendants in error to recover title and possession of an undivided one-half interest in two tracts of land of 76½ acres each, parts of a tract of 354 acres situated in Harris County. The plaintiffs claim by inheritance under Jesse S. Sharman, and the defendants claim by purchase under Harriet Caroline Sharman.

The land was conveyed to Harriet Caroline Sharman by R. D. Westcott on August 12, 1854. At the time this conveyance was made Harriet Caroline Sharman was the wife of Jesse S. Sharman. The deed does not in apt words convey the land to the wife as her separate property to be held for her sole use and benefit, nor does it recite that the consideration for the conveyance was her separate property or funds. Jesse S. Sharman died in 1867, and Harriet Caroline Sharman in 1885. The plaintiffs are children of two of the daughters of said Jesse S. Sharman and Harriet Caroline Sharman. The defendant Joseph R. Sharman claims under deed from his mother, the said Harriet Caroline Sharman, executed in 1881; and the other defendants, who are numerous and need not be named, under deeds from Joseph R. Sharman.

In addition to pleas of not guilty, all of the defendants, save two who filed disclaimers, pleaded limitation of three, five and ten years.

The cause was tried with a jury and a verdict and judgment were rendered in favor of defendants.

The jury were instructed to return a verdict in favor of some of the defendants on their pleas of limitation, and as to the other defendants the cause was submitted upon special issues. In response to questions propounded to them by the charge, the jury found that the consideration

given for the conveyance from Westcott to Mrs. Sharman was her separate property, and that the deed was made to Mrs. Sharman at the request of her husband and with the intention on his part to have the land conveyed to her as her separate property.

Upon these issues the record discloses the following facts: Jesse Sharman, who died in 1867, left nine surviving children, and these children, with one or two exceptions, lived on or near the property in question until after the death of Mrs. Sharman in 1885, and none of them ever questioned the claim of their mother to the sole ownership of the land in controversy, which she continuously asserted, until she sold it to defendant, Joseph R. Sharman in 1881. All of the children living at the time this suit was brought in October, 1907, refused to join therein, and the plaintiffs in the suit are the children of Nancy Sharman, who first married Conroy and then Davis, and Eliza Sharman, who married Stephanes, both of whom were daughters of Jesse and Harriet Sharman. Mrs. Stephanes died in 1872 and Mrs. Davis in 1895, and neither of them is shown to have ever asserted any claim to the land. During Mrs. Sharman's lifetime she openly and notoriously asserted exclusive ownership of the land, and this claim, so far as the record shows, was recognized and acquiesced in by all of the nine children of herself and Jesse Sharman.

Jesse Sharman, the oldest living son of Jesse S. and Harriet Caroline Sharman, who was a witness for plaintiffs, testified that he was born in Harris County in 1850 and lived with his father and mother on the old Sharman place until about a year after the death of his father, which occurred in 1867, and from that time on, until her death in 1885, he lived within one and one-half miles of his mother. During all of this time his mother claimed exclusive ownership of the land in controversy. His mother told him that she owned a negro woman which his father sold, and to compensate her therefor gave her a negro man, and he afterwards gave the negro man for the land, "and, to make her even for the negro he had sold, had the land deeded to her."

Gid Westcott, who married one of the daughters of Jesse S and Harriet Caroline Sharman, testified that some time in the 70's when another of Mrs. Sharman's sons-in-law, a Mr. Talley, talked about bringing a suit for an interest in the land, he, witness, had a conversation in regard to the land with Tom Sharman, who was the oldest child of Mr. and Mrs. Sharman and who is now dead. This testimony is as follows:

"I have talked with Tom Sharman about this matter. At the time when this matter came up about suing the mother, in the 70's, Tom Sharman had a conversation with me about it. I do not know when Tom Sharman was born; he was an older man than I was; he was not living with his mother at the time; he was married then. Before he married he did live with his mother and father and was living with them at the time this slave transaction occurred. At the time of this slave transaction he was over fourteen years old, and lived with his father and mother until he married in the 60's. He lived with his

father until he died, and lived with his mother until he married. Tom Sharman said it was his mother's property."

On cross-examination by the plaintiffs, Gid Westcott further testified: "It was T. J. Sharman that said the property was his mother's. He did not say why it was; he didn't say who paid for it; he said that was his mother's property; I don't know whether it was his idea or whether he knew it positively; he said it was his mother's property and that he was opposed at Mr. Talley (referring to the projected suit) and got vexed at it."

S. T. Sykes testified as follows: "I had a conversation with Tom Sharman when I was buying from the old lady. At the time I talked with him, before I bought from the old lady, as to what he said about his having a claim to the land; he didn't have any and he said it was his mother's property. I did know Mrs. Conroy (referring to the deceased mother of the plaintiffs) in her lifetime, and I talked in regard to me, Tom and her, and she said her mother bought it, but her father was as much interested as she was, and she said her mother's money paid for it; she told me her mother's money paid for it."

H. C. Sapp testified: "That the oldest son of Mrs. Sharman, Tom Sharman, sold him a piece of land that he had gotten from his mother, and that said Tom Sharman told him that the title of this land was vested in his mother; that she had a perfect right to sell it to whom she pleased, and he said it was her individual property. He lived with his father and mother during his life, up to his death."

Joe Sharman testified: "Mrs. Conroy's husband died either just before or just after my father died. She is the mother of the Conroy plaintiffs, and she died March 31, 1895. Mrs. Stephanes died March 27, 1872; she is the mother of the other set of plaintiffs in the suit."

Prior to her sale of the two tracts of 76½ acres each to her son, Joseph R. Sharman, Mrs. Sharman had sold to various parties other portions of the 354-acre tract. These conveyances were made with the knowledge of her children, and her right to make these sales does not appear to have been questioned by any of them, and the title of the purchasers from her and from Joseph R. Sharman appears to have been recognized by all of the heirs of Jesse S. Sharman, at least to the extent that no objection is shown to have been made by any of them to the possession of said purchasers and no effort to recover any part of the land until this suit was brought.

In addition to the portions of their testimony before set out, the witnesses Sykes, Sapp, Westcott and Joseph Sharman each testified to statements made by Mrs. Sharman in regard to the consideration paid for the land and the execution of the deed to her, which were in substance the same as the statements testified to by the witness Jesse Sharman before set out. This testimony of the witnesses Sykes, Sapp, Westcott and Joseph Sharman was objected to by the defendants on the ground that said statements and declarations of Mrs. Sharman were "self-serving, hearsay and immaterial"; were made privately and were not notorious; and "that none of the plaintiffs or their ancestors, or

those in privity with them, were present or given a chance to deny the statement, and such statement was never repeated to them or in their presence, and the statements called for were long after the acquisition of the property which is presumed to be community property, and long after the death of Mrs. Sharman's husband."

These objections were overruled by the court, and this ruling is complained of under the first, second, third and fourth assignments of error. We do not think the court erred in this ruling. The testimony was not. offered nor admitted as evidence in itself of the title of Mrs. Sharman, but to show the circumstance of her claim and its character; and we think, when taken in connection with the other circumstances shown by the evidence, such as the long continuance of her claim, her open assertion and exercise of acts of exclusive- ownership evidenced by repeated sales of portions of the land, and the non-claim of the heirs of Jesse Sharman who knew of these sales and assertions of sole ownership by her, these statements could be properly considered by the jury in determining the question of whether the land was in fact deeded to her with the consent of the husband and with the intention to make it her separate property. The parties to the transaction, which occurred more than fifty years before this suit was brought, are long since dead; and the statements of Mrs. Sharman as to the character of her claim and the facts upon which it was based, repeatedly made when she was in possession of the land, do not appear to have been questioned by those whose interest would have prompted their denial if the statements were not true, and who knew of said statements and were then probably in a position to show their falsity, if they were false, are circumstances which are logically relevant and important in determining the question of whether the property was intended to be conveyed to Mrs. Sharman as her separate property, and should not, after this lapse of time when better evidence can not be procured, be rejected as hearsay and self-serving. Brewer v. Cochran, 45 Texas Civ. App., 179 (99 S. W., 1033); Frugia v. Trueheart, 48 Texas Civ. App., 513 (106 S. W., 741).

If this conclusion is not sound, the assignments can not be sustained because other undisputed evidence to the same effect as that complained of by the assignments was admitted without objection. The testimony of Jesse Sharman, before set out, which was admitted without objection, contains in detail the same statements of Mrs. Sharman as to her claim to the land and the facts upon which it was based as the evidence objected to under these assignments. Having permitted the testimony of Jesse Sharman to go to the jury without objection plaintiffs will not be heard to complain that other testimony showing the same facts was admitted over their objection. Hammon v. Decker, 46 Texas Civ. App., 232 (102 S. W., 454); Rice v. Dewberry, 93 S. W., 721.

If, however, all of the testimony complained of under these assignments should be excluded, upon the other undisputed evidence which we have before set out no other verdict than one in favor of defendants upon the issue of title in Mrs. Sharman could have been properly rendered. The undisputed testimony of plaintiffs' witness, Jesse Sharman, to the

effect that his mother told him that his father had the deed made to her for the purpose of making the land her separate property, and that he did this to compensate her for a negro woman which she had received from her father and her husband had sold, was admitted without objection, and would, standing alone, have authorized a verdict in favor of defendants.   Hardin v. Jones, 29 Texas Civ. App., 350 (68 S. W., 836).

The testimony of this witness, taken in connection with other undisputed evidence admitted without objection and showing the continuous claim and assertion of ownership by Mrs. Sharman and the long acquiescence in such claim by all of the heirs of Jesse Sharman, and its affirmative recognition by some of them, including the mother of most of the plaintiffs, leads to the irresistible belief that the property belonged to Mrs. Sharman in her separate right, and no other reasonable conclusion could have been reached by the jury.

This view of the force of the undisputed evidence renders a discussion of the remaining assignments of error presented in plaintiffs' brief, unnecessary.   If any error is shown by any of said assignments, in view of the undisputed evidence before set out such error was harmless, and all of the assignments are therefore· overruled, and the judgment of the · court below affirmed.

*Affirmed.*

Writ of error refused.