### PURDY v. PRUITT.

#### No. 3584.

Court of Civil Appeals of Texas. El Paso.

Jan. 13, 1938.

Rehearing Denied Feb. 3, 1938.

Ben A. Harper, of Olney, Ill., and Ramey, Calhoun & Marsh, of Tyler, and B. F. Whitworth, of Linden, for appellant.

Thomas Fletcher and Vinseon, Elkins, Weems & Francis, all of Houston, and Carney & Carney and Hugh Carney, all of Atlanta, for appellee.

HIGGINS, Justice.

V. S. Pruitt and others claiming under him brought this suit September 12, 1935, against Mrs. T. M. Purdy, surviving wife of T. M. Purdy, deceased, and the surviving children of said deceased, to recover 220 acres of land. All of the defendants except C. G. Purdy filed disclaimers. C. G. Purdy disclaimed as to all of the land except a tract of 14½ acres. As to this, he pleaded not guilty and the 10-year statute of limitation next prior to December 1, 1926. He also pleaded limitation under the 10-year statute next preceding the institution of the suit. Rev.St.1925, art. 5510. At the conclusion of the evidence the jury was peremptorily charged to find for the plaintiffs.

The 14½-acre tract was conveyed to C. G. Purdy on August 3, 1935, by his parents, T. M. Purdy and wife. T. M. Purdy died a few days later. The 220-acre tract is known as the Pruitt place. Lying immediately south of and adjacent to the Pruitt tract is a tract of 119 acres which was owned by T. M. Purdy as community property of himself and wife. The south line of the 14½-acre tract is the same as the south line of the 220-acre tract and the north line of the Purdy 119-acre tract. The 14½-acre tract is an irregular quadrilateral which lies approximately midway between the west and east lines of the 220-acre tract.

The field notes in the deed from T. M. Purdy and wife to C. G. Purdy call to begin at a "stake in the N.E. corner of the G. W. Colly farm at the N.W. corner of the T. M. Purdy 119 acre farm a stake in the wash on the East side of a road running North and South." The last two calls read:

"Thence S. 24 E. 564 feet to NW corner of old Balluf (referred to in the Statement of Facts as Bellow) 100 acre tract now owned by Mrs. Lula Alvarez, and NE corner of the T. M. Purdy 119 acre farm from whence a large sweet gum 24 in.

diameter bears SE 15 feet distance marked X old mark;

"Thence Westerly along the North base line of the T. M. Purdy 119 acre tract at N 86 West 1865 feet to the place of beginning."

It was shown that the southeast corner of the 14½-acre tract is the same as the northeast corner of the Purdy 119-acre tract. By deed dated November 29, 1927, T. M. Purdy and wife conveyed to their daughter, Mrs. Daniel, 17 acres out of the southeast corner of the 119-acre tract, in which conveyance it is said:

"Said 119 acres bounded on the North by lands owned by Heath & Pruitt; on the East by lands owned by Balluf estate; on the South by lands owned by a man named Powers and on the West by lands owned by G. W. Colly."

On November 23, 1934, T. M. Purdy and wife leased to K. O. Bundy "119 acres, more or less, in William Edmondson survey and bounded as follows:

"On the North by 220 acres owned by V. S. Pruitt, on the East by 100 acres owned by Anna Louize Alvarez, on the South by 55 acres owned by Charles Moore, and on the West by 237 acres owned by W. G. Colly."

On March 3, 1926, T. M. Purdy executed and delivered to Pruitt an agreement which reads:

"Agreement

"I, T. M. Purdy, do hereby certify that my fence is over the line of my land in the Edmondson Survey on the entire North line, and I have something like 10 acres more or less, under fence, and am farming same at present. Said land belonging to V. S. Pruitt, of Kildare, Texas.

"I hereby agree to give V. S. Pruitt full possession to the land in question, December 1st, 1926. It is also agreed that I am not to pay any rent for the year 1926.

"T. M. Purdy."

Pruitt testified in his own behalf that in 1926 T. M. Purdy showed him the north line and corners of his 119-acre tract; the line so shown him was the south line of the 14½-acre tract; and Purdy said the land in cultivation by him north of that line did not belong to him and he did not claim it, though he had cleared it "and worked it all these years," because it was a good piece of land.

A number of other witnesses testified in behalf of the appellees to the effect that about March, 1926, Purdy showed them the north line of the land claimed by him and its corners; that Purdy told them he did not claim the land north of that line. The line so shown was the north line of the 119-acre tract and the south line of the 14½-acre tract. Among the witnesses so testifying was L. L. Linson, a surveyor, who surveyed the land. W. L. Hartzo testified he moved to the Purdy place in 1890-91; that T. M. Purdy showed him his northwest line which was the south line of the tract in controversy. The witness Whatley, in effect, testified that in 1888 or 1890 T. M. Purdy stated to him he did not claim the land north of the 119-acre tract, and that he paid rent on the same.

■ Summarizing the evidence in behalf of the appellee upon the issue of limitation, it may be said it abundantly shows that during all of T. M. Purdy's use, occupancy, and possession of the 14½-acre tract he did so in recognition of and in subordination to the true owner thereof. A possession of that character is not adverse and will not support a plea of title by limitation. Mhoon v. Cain, 77 Tex. 316, 14 S.W. 24; Thompson v. Moor, Tex. Com.App., 14 S.W.2d 803; Texas W. Ry. Co. v. Wilson, 83 Tex. 153, 18 S.W. 325.

■ But if there is any evidence sufficient to raise an issue of fact as to whether or not the possession of T. M. Purdy was adverse, then, of course, the issue of limitation should have been submitted to the jury.

■■ No estoppel against T. M. Purdy arose by virtue of the descriptions contained in the deeds and oil lease above mentioned, because appellees were strangers to those instruments. Stark v. Hardy, Tex.Com.App., 29 S.W.2d 967; Williams v. Chandler, 25 Tex. 4. The recitals in the descriptive matter mentioned are merely evidentiary upon the controlling issue in this case, which is whether the possession of T. M. Purdy of the disputed area was adverse. The written agreement above mentioned is not conclusive of the issue. It was shown that T. M. Purdy had in his possession, using and cultivating for a number of years, about 10½ acres of the Pruitt land lying immediately north of the 14½-acre tract. It is apparent the agreement related to that 10½ acres and not to the 14½ acres in controversy. The

very fact that Purdy limited his admission of tenancy to said 10½ acres implies an adverse claim by him to the 14½ acres in controversy.

In behalf of the appellant, Mrs. T. M. Purdy testified that she is the surviving wife of T. M. Purdy, deceased, and C. G. Purdy is their son; she and T. M. Purdy moved on the "Purdy Place" about fifty-seven years prior to the date of the trial; they had been married fifty-nine years at the time he died; when they moved on the "Purdy Place" there was not any land whatever in cultivation; when they went on the tract T. M. Purdy cut logs out of the yard, cleared a place to build the house, and then used the logs to construct the house; about one year after the house was built T. M. Purdy started clearing land; the cultivated portion of the disputed 14½-acre tract of land was the first land he cleared and put in cultivation after they moved on their farm and built their house; a small portion of the land was used as a pasture, the remainder being cultivated constantly since it was first cleared up; she never knew of T. M. Purdy paying any rent on the 14½-acre tract; some years T. M. Purdy worked the land himself, and in other years it was farmed by tenants of T. M. Purdy who were living on the "Purdy place" and renting from T. M. Purdy. She stated the 14½-acre tract was used by them in connection with the other land that they owned there, and that said tract had been under fence during the entire period of time. She stated her husband split the rails and built the first fence that was placed around the tract of land; that this rail fence was finally replaced by a wire fence, but the land had been under fence since her husband first cleared it up and put it in cultivation; she herself never made any agreement or knew of any agreement whereby she or T. M. Purdy paid or agreed to pay rent to anybody for said 14½-acre tract of land, and she herself at all times claimed the land as their own.

C. G. Purdy testified he was born on the 119-acre tract of land known as the "Purdy place"; that he was thirty-three years of age at the time of the trial; that his father and mother had lived on said 119-acre tract of land during his entire life; he had been familiar with the location of said 14½ acres of land all of his life; said tract had been in cultivation as far back as he could remember. He stated that, during said entire period of

time, his father, T. M. Purdy, had used said tract of land, a part of it for pasture purposes and had cultivated the remainder, planting corn, cotton, peas, peanuts, etc., thereon each year; T. M. Purdy occasionally sowed oats in the pasture, kept stock in it, and the land was suitable for pasture purposes. Witness stated that during said entire period of time, the 14½ acres of land had been under the fence of T. M. Purdy, who maintained the fence in a good state of repair; it was "kept in shape where cattle and hogs and things couldn't get out and in"; that witness himself had maintained the fence in a state of repair, and had seen his father and various other members of the T. M. Purdy family working on, repairing, and maintaining said fence; the fence was kept in good shape all the time, and would turn live stock. He further testified that just north of the 14½-acre tract of land in dispute was located another tract of cultivated land, consisting of approximately 10½ acres; that land belonged to V. S. Pruitt, and although T. M. Purdy, father of witness, cleared the land during his lifetime, farmed, and used it, said T. M. Purdy never did claim that tract of land, but stated on various occasions it belonged to V. S. Pruitt. During the time T. M. Purdy was cultivating the 10½ acres (lying north of the 14½ acres in dispute), T. M. Purdy moved and extended the fence along the north line of the 14½-acre tract to a position farther north so as to embrace and take in the 10½ acres; the old fence row along the north line of the 14½-acre tract is still visible on the ground, but the fence itself was moved farther north so as to embrace the additional 10½ acres cleared up and used by T. M. Purdy; in recent years both the 14½-acre tract and the 10½-acre tract have been under the same fence. However, the witness stated that T. M. Purdy never, to his knowledge, made any claim to the 10½ acres, but was simply using same, as the witness understood, with the permission of V. S. Pruitt. He could well remember that said 14½-acre tract had been under fence and in cultivation since witness was twelve years of age, since which time the 14½ acres had been constantly under fence and used by T. M. Purdy up until T. M. Purdy deeded the 14½ acres to the witness, C. G. Purdy, and by the witness since that time; T. M. Purdy farmed the land himself some years, and during other years rented it to various tenants on his farm. It was

also shown that T. M. Purdy's residence was on the 119-acre tract a short distance south of the 14½-acre tract. The testimony shows that his barns, outhouses, stables, cow lots, etc., including gardens, patches, etc., such as are ordinarily found adjacent to a residence, were located on this 14½-acre tract.

■ Mrs. Daniel, Mrs. Rosser, Mrs. Fitzgerald, daughters of T. M. Purdy, and A. H. Daniel, a son-in-law, testified to the inclosure, possession, cultivation, and use of the disputed area substantially the same as the defendant C. G. Purdy. Upon objection that it was hearsay and self-serving, the court excluded testimony by the appellant, his mother, and the witnesses last named, of declarations made in their presence by T. M. Purdy while he was in possession of the land to the effect that the 14½-acre tract was his land. To the exclusion of this testimony, appellant assigns error. The rule is that declarations of ownership by one in possession of land is evidence of the adverse character of such possession and admissible. Jackson et al. v. Piper et al., Tex.Civ.App., 28 S.W.2d 240; Lochridge v. Corbett, 31 Tex. Civ.App. 676, 73 S.W. 96; Chapman v. Kellogg, Tex.Com.App., 252 S.W. 151; Curtis v. Wilson, 2 Tex.Civ.App. 646, 21 S.W. 787; Harnage v. Berry, 43 Tex. 567; Smith v. Robertson, Tex.Com.App., 235 S.W. 847; Humphreys v. Green, Tex.Civ. App., 271 S.W. 116; Bishop v. Paul, Tex. Civ.App., 217 S.W. 435; De Ramirez v. De Ramirez, Tex.Civ.App., 29 S.W.2d 872; Hickman v. Gillum, 66 Tex. 314, 1 S.W. 339; Gunn et al. v. Wynne et al., Tex. Civ.App., 43 S.W. 290, 291; Texas & N. O. Railway Co. v. Broom, 53 Tex.Civ.App. 78, 114 S.W. 655; Conroy et al. v. Sharman, 63 Tex.Civ.App. 482, 134 S.W. 244; Lester v. Hutson, Tex.Civ.App., 167 S.W. 321; Whittaker v. Thayer, 48 Tex.Civ.App. 508, 110 S.W. 787; Word v. Drouthett, 44 Tex. 365.

The court erred in excluding such testimony.

■ The testimony in this case shows the disputed tract had been in the actual and exclusive possession of T. M. Purdy for about forty-five years prior to 1926. During all this time he had been cultivating, using, and enjoying the same. His possession and use during all these years indicated a hostile claim. It is true Whatley testified that in 1888 or 1890 Purdy stated to him he did not claim the land and paid rent on same, but Whatley's testimony is not conclusive of the issue as to the nature of Purdy's possession. The jury would have been authorized to reject Whatley's testimony or attach no weight to it. Appel v. Childress, 53 Tex. Civ.App. 607, 116 S.W. 129.

■ The evidence raises the issue of title by limitation under the 10-year statute maturing prior to December 1, 1926, Rev. St.1925, art. 5510.

If the title was so acquired by T. M. Purdy, it was not defeated by the subsequent declarations in 1926 testified to by Pruitt and others. Illg v. Garcia, 92 Tex. 251, 47 S.W. 717.

■ We are also of the opinion the evidence raises the issue of title under the 10-year statute maturing at any time prior to the filing of the suit.

As heretofore shown, Purdy, in 1926, was in possession of, using, and cultivating about 10½ acres of Pruitt's land immediately north of and adjoining the disputed area. The written agreement quoted above related to this 10½ acres only. The declarations of Purdy in 1926 as testified to by various witnesses may also have referred to the 10½-acre tract rather than the tract in controversy. The line shown to such witnesses by Purdy may have referred simply to the north line of his 119-acre tract.

Under all of the facts and circumstances reflected by the evidence, it was for the jury to determine the weight to be given to the testimony of such witnesses and reject the same if it saw fit to do so. Appel v. Childress, 53 Tex.Civ.App. 607, 116 S.W. 129.

The ruling upon evidence complained of in the sixth proposition was erroneous. The error, however, is not reversible.

Reversed and remanded.