## HINNANT v. RODRIGUEZ et al. (No. 7005.)

(Court of Civil Appeals of Texas. San Antonio. Oct. 31, 1923. Rehearing Denied Dec. 5, 1923.)

1. Infants �köö29—After long acquiescence in partition plaintiffs cannot speak to detriment of innocent purchasers.

Where voluntary partition was made of land in 1881, during minority of plaintiffs, but such disability was removed by marriage of one of them before partition of property in Mexico in 1883, which ratified the partition of 1881, and the other became of age in 1889, after 40 years of acquiescence and failure to set up claim to any part of the land, plaintiffs will not be permitted to speak to detriment of innocent purchasers.

2. Infants ⊝⊸98—Presumption not entertained that minors executed instruments they were legally incapable of executing.

Where voluntary partition was made of land at a time when claimants thereto were minors, a presumption cannot be entertained that claimants executed powers of attorney or other authority to represent them which they were incapable in law of executing.

3. Witnesses ⊝⊸163—Evidence of plaintiffs as to admissions of deceased under whom defendants claimed not admissible.

Under Rev. St. art. 3690, evidence by plaintiffs, seeking to recover land, as to admissions made by decedent under whom defendants claimed, as to plaintiffs' rights in the land, was not admissible to show possession not adverse.

4. Evidence ⊝⊸265(5) — Claim held not defeated by plaintiffs' evidence as to admissions of decedent.

The right of deceased to ownership of land by adverse possession cannot be defeated by evidence of his alleged admissions against his title to plaintiffs claiming an interest therein, when contradicted by his actions for 40 years.

5. Limitation of actions ⊝⊸78—Disabilities cannot be tacked.

The disability of coverture cannot be tacked to that of infancy previously existing, so as to prevent limitation from commencing to run on expiration of disability of infancy.

Appeal from District Court, Webb County; J. F. Mullally, Judge.

Partition by Alberta Flores de Rodriguez and another against Rufino Lopez and others. From judgment rendered, defendant Robert Hinnant appeals. Reversed and rendered.

Mann, Neel & Mann, of Laredo, for appellant.

W. W. Winslow and John L. Dannelley, both of Laredo, for appellees.

FLY, C. J. This is an action for partition, which resolved itself into an action of trespass to try title as well, instituted by Alberta Flores de Rodriguez and Crisanta Flores de Galvan against Rufino Lopez, Ascencion Martinez, and Robert Hinnant. The first two named defendants made no claim to any part of the land, except that which the plaintiffs admitted they owned, and the only contest was between the plaintiffs and appellant, who claimed 1,117 acres. He pleaded not guilty, and pleaded 5 and 10 years' limitations.

The cause was tried without a jury, and judgment was rendered in favor of the two plaintiffs for 104 acres each of the land; in favor of Rufino Lopez for 876.75 acres; in favor of Ascencion Martinez for 133 acres; and in favor of appellant for 910.25 acres, and a partition of the land was ordered. Robert Hinnant alone prosecutes this appeal.

The facts in this case show that the land in controversy is a portion of a tract of land which was the community estate of Pedro Flores, Sr., and wife, and had been since 1859. On June 14, 1881, the said Pedro Flores died intestate in Guerrero, Mexico, leaving his wife, Agustina Trevino de Flores, and nine children, among whom were the appellees in this case, Alberta being a girl of 16 years, and Crisanta a girl of 13 years. There was no administration of the estate, and no guardian was appointed for the two girls. They were afterwards married, and both were widows when this suit was instituted. On December 8, 1881, about 6 months after the death of Pedro Flores, Sr., Juan A. Flores, Antonio Mariano Flores, and Abraham Flores, the last named for himself and as representative of his mother, Agustina Trevino de Flores, and Jesus Ma. Gutierrez as representative of his wife, Teresa Flores, and one Juan M. Flores as representative of four minor children of Pedro and Agustina Flores; namely, Maria, Alberta, Crisanta and Pedro Flores, made a voluntary partition of the estate of Pedro Flores, Sr., and Agustina Trevino de Flores in Texas, including the land in controversy. They made, signed, acknowledged, and filed ten inventories of the partitioned land, one for the widow and one for each of the children of Pedro Flores, Sr., and made deeds one to the other of the parts allotted to each of the heirs, and caused the same to be recorded. There was no evidence of the existence of powers of attorney or of authority given to those claiming to be acting as representatives of the several heirs to so act. However, the partition was treated as valid and binding by all the heirs, unless Alberta and Crisanta did not so treat it. The land was given to five of the heirs, none being allotted to either of the four minors hereinbefore mentioned, but personal property in lieu thereof was allotted to each of them. They claim that they knew nothing of the partition, but, in a partition of the property

⊝⊸For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

in Mexico, it was assumed by all the parties that a legal partition was made in Texas, and the same was taken into consideration in the partition of the Mexican property, and all were satisfied therewith. Among the Texas lands of the Flores estate was an undivided interest of 2,128 acres in a 5-league tract in Zapata county, commonly called the "Las Animas" tract, it being the same tract in which appellees claim an undivided interest of 104 acres each. The 2,128 acre interest was allotted to Jose Maria Flores and Pedro Flores in the partition of the estate. They went into possession of the 2,128 acres, and used it for stock-raising purposes. There was a house and other improvements on the land that had been used by Pedro Flores, Sr., as his family residence. A few years after 1881, that is, in 1884, Jose Maria Flores died intestate, leaving no wife or children, and Pedro Flores, Jr., and his mother took possession and used his portion of the land until 1897, when the mother died and Pedro became the sole possessor.

On July 18, 1903, by deed of that date, which was filed for record November 10, 1903, a partition was had among the several claimants of the Las Animas 5-league grant.

On July 27, 1897, Agustina Trevino de Flores died intestate, and left surviving her eight children by Pedro Flores, Sr., deceased, Abraham, Antonio, Juan, Mariano, Alberta, Crisanta, Teresa, and Pedro Flores, Jr. Appellees got their portion of the mother's land.

In 1903, Alberta, joined by her husband, sold 133 acres of the 2,128 acres of land to Rufino Lopez, and in 1913 Crisanta sold 132¾ acres to the same party. In 1918 Pedro Flores, Jr., died; intestate, leaving as his heirs his wife and eight children.

In 1900, the said Pedro Flores had inclosed about one-half of the 2,128 acres, and was in possession and in continuous use of it up to the time of his death in 1918. He gave various mortgages on the land, in some of them describing it as all his right, title, and interest in the Las Animas land, and in others as 1,197 acres in Las Animas. These mortgages bore dates from 1892 to December 28, 1914, inclusive. He rendered for taxation 1,226 acres of the land from 1889 to 1902, except the years 1892, 1899, and 1901. He rendered 1,197 acres for 1906, and 1,120 acres for 1917. He redeemed from tax sale and delinquencies to the state 1,226 acres for the years 1892, 1899, 1901, 1903, 1904, 1905, 1907, 1908, 1909, 1910, and 1912. On December 28, 1914, Pedro Flores, Jr., conveyed 80 acres of the land to Rufino Lopez.

On July 31, 1920, the widow and four adult children of Pedro Flores, Jr., conveyed to Robert Hinnant, appellant, all their interest in share No. 1 in the Las Animas grant, containing 1,120 acres, and on August 20, 1920, the four minor children conveyed their interest in the land, through their guardian, to appellant.

On May 10, 1921, appellant, Rufino Lopez, Ascencion Martinez, M. de Garcia, and Humberto Martinez, as the only owners of the 2,128 acres in the Las Animas grant, made a partition deed among themselves, setting aside to Robert Hinnant as his share 1,117 acres, described by metes and bounds, and being the same land fenced with a wire fence by Pedro Flores and possessed and used by him as his own from 1900 to 1918, when he died, a period of 18 years. Through all those years, and years before, appellees testified he was claiming it as his own. He rendered it for taxation, and time and again redeemed the land from tax sales, and appellees paid no taxes, and at no time set up any claim to the land until this suit was filed on September 26, 1922. Before the apportionment of that part of the estate in Mexico, Alberta Flores had married, and, in the decree of partition, the partition of the estate in Texas was recognized, and the same was confirmed. In the Mexican court the partition and allotment to Crisanta Flores was also recognized and confirmed. Both of the appellees have at all times recognized and acted on the validity of both partitions. Crisanta Flores married in 1893, when she was 25 years old.

Alberta Rodriguez swore that her brother Pedro had taken possession of the largest part of the land "not because it belonged to him, but just because he had taken it. I guess he was claiming it as his own." However, she stated that her brother knew that she and her sister had some rights in the land, because at various times he asked her to sell to him, and she would not do it.

Crisanta Galvan testified that her brother attempted to buy her interest in the land. Neither of the sisters fixed any time when offers to buy were made by their brother, Crisanta only stating that it was before the brother went to Mexico to enter some war, but when is not disclosed.

[1] When the Texas partition of the estate was made, appellees were both minors, but the disability of Alberta was removed by marriage before the partition in Mexico in 1883, and Crisanta became of age in 1889, and also married in 1893. Each of them received the sheep set apart to them in the partition in Texas, and also accepted the property set apart to them in the Mexican partition, and acted on the same. The Texas partition proceedings were duly recorded, and for 40 years neither of the appellees complained of its provisions. They were charged with its terms, they knew that they had been deprived by that partition of all right, title, and interest in the lands possessed by their father at the time of his death, but they made no objections, and set up no claims to any part of the land. They were not so affluent as not to need the property, but were poor and needy, and yet they

were silent. They should not, after the long years of silence and acquiescence, be allowed to speak to the detriment of those who have acted on their silence. <sup>a</sup> Pomeroy's Equity Jur. §§ 804, 805.

[2] The partition of the Texas property in 1881 was not binding on the minors, and we cannot from long lapse of time presume that the representative of the minors had a power of attorney or any other authority to represent them. A presumption cannot be entertained that the minors executed instruments which they were incapable in law of executing, but when they, after their disabilities were removed, accepted under the partition agreement, and through 40 years or more made no effort to annul it or set it aside, they cannot be heard in the attempt to enforce claims antagonistic to the partition agreement. They cannot lead innocent purchasers to purchase land to which they had never laid claim, and then deprive them of the land. Justice and equity cry out against the perpetration of such wrong and injustice, and courts will not countenance such practice.

[3, 4] The facts of this case show exclusive adverse possession of the land for 18 years at least; the land inclosed by a wire fence; all the rights of ownership being exercised; and all its burdens assumed and met; and this perfect case of adverse possession is sought to be destroyed by testimony of the two women seeking to recover the property as to admissions made by the dead man as to their rights in the land. The testimony should not have been admitted under the express prohibition of article 3690 of the Revised Statutes of Texas, and, while not objected to, it is unreasonable, and utterly inconsistent with all the acts of Pedro Flores, Jr., in connection with the land. He is dead, and cannot deny the admissions attributed to him, but all his actions through 40 years of life give falsity to such alleged admissions against his title. Upon such testimony, branded as tainted and unworthy by the statute, no citizen should be deprived of his rights of property.

[5] It is well settled, and probably needless to mention it, that disabilities cannot be tacked, and therefore, when the minor Alberta married and Crisanta became of age, the statutes of limitations became applicable, and time began to run against them as hereinbefore stated. A party can avail himself only of the disability which existed at the time the cause of action accrued. The disability of coverture cannot be tacked to that of infancy previously existing, so as to prevent the statute of limitation from commencing to run on the expiration of the disability of infancy. Ragsdale v. Barnes, 68 Tex. 504, 5 S. W. 68.

The judgment will be reversed, and judgment here rendered that appellees recover nothing on their suit, and that appellant recover of them all costs in this behalf expended.