JAMES H. ALLEN v. JOHN S. CLEARMAN ET AL.

Decided May 4, 1910.

**1.—Evidence—Land Office Records—File Wrapper.**

A certified copy of memoranda upon a file wrapper in the General Land Office, enclosing the papers relating to and indicating the different steps that had been taken by the Land Commissioner with regard to a certificate, survey and patent, purporting to have been made by different clerks during the progress of the matter through the Land Office, is competent evidence.

**2.—Same—Letter not an Archive.**

A letter written by the claimant of a land certificate to the Commissioner of the General Land Office and on file in the office, wherein the writer asks concerning a certain transfer in his chain of title, is not such an archive as will authorize the admission in evidence of a certified copy thereof.

**3.—Same—Transfer of Land Certificate—Circumstantial Evidence.**

Where a defendant in trespass to try title relied upon circumstantial evidence to prove the existence and execution of a transfer of a land certifi-

cate, a certified copy from the deed records of a county of a copy of a deed purporting to convey said certificate to the party under whom defendant claimed, was admissible in evidence as a circumstance tending to prove said facts.

### 4.—Limitation—Adverse Possession—Insufficient Evidence.

The occasional sale of shell from a shell bank on the lots in controversy, by the claimant of the lots, would not constitute such adverse possession of the lots as would support a plea of limitation.

### 5.—Same—Five Years Statute—Defective Charge.

A charge on the five years' statute of limitation which failed to instruct the jury that it was an essential element of such claim that the possession must have been under a registered deed, was materially erroneous.

### 6.—Practice—Harmless Error—Affirmance.

Circumstantial evidence of the transfer of a land certificate by virtue of which the land in controversy was located and patented and under which the defendants claimed, reviewed, and held to so conclusively establish said transfer as to render it improbable that the jury were misled to appellant's prejudice by an error in the charge of the court upon the five years statute of limitation, and hence to require an affirmance of the judgment.

Appeal from the District Court of Aransas County.   Tried below before Hon. E. A. Stevens.

*F. Stevens* and *E. Gordon Gibson*, for appellant.—Memoranda made on a file cover by the clerks in the General Land Office for convenience of reference do not constitute a record of the General Land Office of which certified copies are authorized by law to be made and used as evidence.   Rev. Stats., arts. 2306, 2308; Rogers v. Pettus, 80 Texas, 425; Franklin v. Tiernan, 62 Texas, 101, 102; Fisher v. Ullman, 3 Texas Civ. App., 322, 324; Paschal v. Perez, 7 Texas, 348; Polini v. Gray (English), 12 Chy. Div., 411.

The Manning letter to the Land Office is not an archive of the Land Office of which copies may be made and used as evidence.   Rogers v. Pettus, 80 Texas, 425; Lott v. King, 79 Texas, 292; Paschal v. Perez, 7 Texas, 348.

The Manning letter is unsworn testimony in the nature of hearsay. It does not come within any of the exceptions to the rule against hearsay and is inadmissible.   Taylor on Evidence (10th ed.), par. 553; Greenleaf on Evidence (16th ed.), sec. 98 et seq.; Wharton's Law Lexicon, p. 341.

The Manning letter is a mere narrative of past events and self-serving declarations and is inadmissible as evidence for Manning or his successors in title.   Herndon v. Davenport, 75 Texas, 462; Byers v. Wallace, 87 Texas, 503; Dewees v. Bluntzer, 70 Texas, 408; Powell on Evidence (6th ed.), 191.

The court erred in permitting the defendants to introduce in evidence for any purpose the certified copy of the record of a purported copy of an alleged deed from John Keetles et al. to W. C. Blair. Schunior v. Russell, 83 Texas, 85, 95; State v. Cardinas, 47 Texas, 250; Broxson v. McDougal, 63 Texas, 193, 195; Powell on Evidence (6th ed.), 397; 17 Cyc., 536 et seq.; Greenleaf on Evidence, par. 536; 5 Current Law, 1318, and notes.

*Denman, Franklin & McGown,* for appellees.

REESE, ASSOCIATE JUSTICE.—This is a suit in trespass to try title by James H. Allen against John S. Clearman and others to recover land described as blocks 6, 7, 18 and 19 in the Manning addition to the city of Rockport. Defendants disclaimed as to block 18, and as to the balance of the land pleaded not guilty and title under the statute of limitation of five and ten years, and upon trial with a jury plaintiff had judgment for that block and defendants had judgment for the other three blocks. From the judgment plaintiff appeals.

The land is a part of a 320-acre survey patented to John Keetles in 1867, by virtue of headright certificate for 640 acres issued to him in 1845. The certificate was located in two surveys of 320 acres each. Plaintiff deraigned title under a deed from all the heirs of John Keetles executed in 1895. Plaintiff was entitled to recover unless such right was defeated by the evidence offered of a conveyance of the certificate by Keetles to W. C. Blair in 1845, under which appellees claim title, or by the limitation title set up by them. Appellees undertook to establish by circumstances the execution by Keetles and wife of a transfer to W. C. Blair in 1845 of the certificate. The evidence offered was sufficient to sustain the verdict of the jury for defendants on this issue. This evidence will be further particularly set out in our conclusions of law upon the whole case.

Appellees introduced in evidence a certified copy from the General Land Office of certain memoranda made upon the file wrapper covering the papers relating to the certificate and survey in question, purporting to have been made by different clerks in the General Land Office. Appellant objected on the ground that these were not such records of the Land Office as could be proved by certified copy under the statute. (Arts. 2306-2308, Rev. Stats.) These memoranda indicated the different steps that had been taken by the Land Commissioner with regard to the certificate, survey and patent, purporting to have been made during the progress of the matter through the Land Office, and were properly admitted so far as material or relevant. All of the material facts shown by these memoranda, relating to the survey and the issuance of the patent, were otherwise shown and were in fact a part of appellees' title. Appellant's objection is, in fact, leveled at the following memoranda: "Transfer from W. C. Blair to J. M. Manning withdrawn by C. R. Johns & Co., Aug. 10, 1867." "Pat. del'v'd to Flan. Everett Sept. 12/67." If there was any merit in appellant's contention that certified copies of these memoranda were not admissible, the error of the court in admitting them was harmless for the reason that these facts were fully covered by a written agreement with regard to the evidence entered into by the parties and introduced in evidence. This agreement in fact furnished much the largest portion of the evidence of both parties. The assignment is overruled.

Objection was also made by appellant, and overruled and a bill of exceptions taken, to the introduction in evidence of a certified copy from the General Land Office of a letter from J. M. Manning to the Land Commissioner dated October 8, 1854, as follows:

". . . I also send enclosed the surveys of 640 acres of land made in said Refugio County as per cert. No. 12, class 4th, issued in Victoria to John Keetles, also the deed of W. C. Blair to me for said certificate. Wishing you would notify me by mail of the receipt of said papers. . . . Please also inform me if the W. C. Blair has deposited in the Land Office the deed of John Keetles to the within referred to certificate. Said deed was made to Mr. Blair and entered in a deed where two and three certificates was purchased at the same time by said Blair, I believe in N. York.

Yours respectfully,

James M. Manning."

It was objected that this letter was not an archive of the Land Office of which certified copies might be used as evidence. This is complained of by the second assignment of error. We think the objection is good. (Rev. Stats., art. 2306; Rogers v. Pettus, 80 Texas, 425; Lott v. King, 79 Texas, 292.) The letter was introduced as one of the circumstances tending to show a transfer of the certificate by Keetles to Blair. So far as it refers to the filing in the General Land Office of the surveys and the transfer by Blair to Manning, these facts are expressly embraced in the agreement as to evidence. In so far as it refers to the execution of a transfer by Keetles to Blair, it could have been considered by the jury only as a claim by Manning that such transfer existed, and the fact that Manning made this claim from the beginning and always persisted therein, is also abundantly shown by the agreed evidence and other undisputed evidence. The evidence is so clear upon this point that we are disposed to regard the admission of this evidence, if error, as harmless. (Holt v. Maverick, 24 S. W., 532.)

There was, no error in permitting appellees to introduce in evidence the certified copy of the record of the purported copy of the transfer from Keetles to Blair of the certificate in question. This was offered as a circumstance only, and was fully authorized by the agreement referred to. The instrument in question purported to be a copy certified by the county judge of Calhoun County, June 11, 1855, to be a true copy of a deed signed by Elizabeth Gray, John G. Keetles and Mary J. Keetles, his wife, and duly acknowledged before Sam R. Betts, Judge of the United States for the Southern District of New York, dated September 11, 1845, conveying to W. C. Blair three land certificates, including the one in question, and which had been recorded in Calhoun County January 6, 1845; in Refugio County, in which the land lay at that date, July 24, 1867; and afterwards transcribed into the transcribed records of Aransas County. These facts were all covered by the agreement. We think that without such agreement they would have been admissible in evidence as circumstances in connection with other circumstances established by the undisputed evidence, all of which tended to establish the same fact, to wit, the transfer of the certificate by Keetles to Blair, who in turn, as shown by his deed in evidence, conveyed it to Manning. The court properly limited the effect of the evidence as a circumstance merely. The jury were left free to determine its weight as such.

The fifth assignment of error presents the proposition that the court erred in submitting the issue of the statute of limitation of either five or ten years. We have examined very carefully the extremely meagre testimony of the three witnesses introduced by appellees to establish their defense of limitation and we find it wholly insufficient to raise the issue of a continuous actual possession of any part of the property sued for, for even five years.

W. B. Abney testified that the widow of J. W. Clearman, under whom appellees claim and to whom Stockley sold the land in 1887, and who died in 1898, had sold shell from the shell bank on the lots since Clearman's death, and that witness had also done so as her representative. This is the full extent of his testimony. John S. Clearman, son of J. W. Clearman, testified that his father sold shell from the land and that since his father's death his mother had also done so. This is the full extent of his testimony. The remaining witness testified, quoting his testimony in full from the statement of facts: "That he lived in Rockport from 1867 to 1879 and at various times thereafter; he knew James M. Manning. In 1869 witness went dew-berrying on the 'reef' near this land and saw a small two-roomed house on block 6. Manning lived there a short time. Block 6 was not fenced then. In 1869 a packery was built on block 7 by Jacob Euper & Co., and the house was used as a boarding house by said Euper & Co. (the house on block 6). Block 7 was fenced in 1869. Witness was eight years old then; he sold papers to the men working in the packery in 1869; thought the packery was operated by Euper. They killed for hides and tallow. There was a killing at this packery in 1874. Witness remembered it because he and Buddy Stewart and some others had eaten brains from ten head of beeves scrambled with eggs there—they got the brains from the packery—that was the last killing he knew of there. Saw the property again in 1879. Packery was all gone that year; part of the fence on block 7 was still standing in 1879. The house on block 6 had been moved away; there was no fence on block 19 at any time."

The evidence does not raise the issue of limitation. The occasional sale of shell from a shell bank on the lots, as shown by the evidence, was not such adverse possession as would support limitation. Stegall v. Huff, 54 Texas, 193; Cook v. Lister, 15 Texas Civ. App., 31 (38 S. W., 380). The court erred in submitting the issue. The purpose of this full statement of the evidence on this issue will appear in another portion of these conclusions.

Objection is also made, by the sixth assignment of error, to the charge on five years limitation on the ground that the court did not instruct the jury that it was an essential element of such claim that the possession must have been under registered deed. This objection is borne out by the record. Appellees seek to avoid it by the statement that the undisputed evidence showed that the possession claimed in support of the statute was under registered deed and the court did not err in not submitting that feature of the issue. Unfortunately, the statement of facts does not support this statement. The only deed in the entire chain of title down to appellees which

is shown to have been registered, is the deed from Blair to Manning conveying the certificate, dated October 19, 1849, recorded in Refugio County, in which the land then lay, in 1867, and afterwards, date not shown, recorded in Aransas County. Manning conveyed to Jacob Euper & Co. March 22, 1870, and other deeds followed down to John W. Clearman, ancestor of appellees. None of them are shown to have been registered. The court instructed the jury to disregard all evidence of possession prior to March 30, 1870. Under this instruction the possession of Manning, testified to by Andrews, does not count. So appellees can rely only upon the possession by Euper and those succeeding him in support of their limitation of five years, and no part of such possession was shown to be under registered deed. The charge on five years limitation was error, and the assignment must be sustained.

We have examined the other assignments of error and the propositions thereunder and conclude that none of them should be sustained, and they are severally overruled.

Appellees seek to answer all of the assignments of error by the general proposition that the evidence as to the transfer by Keetles of the certificate is of such conclusive character that the court should have instructed the jury to return a verdict for appellees on this issue, and hence errors pointed out by appellant were harmless. If appellees' premise is correct, the conclusion necessarily follows. Let us see what are the facts established by the undisputed testimony, consisting mostly of a written agreement as to the evidence made part of the statement of facts. They are as follows:

The certificate in question was issued to John Keetles in 1845. It was filed in the General Land Office November 6, 1854, and patent issued for two surveys of 320 acres each in name of John Keetles September 10, 1867. This patent was delivered to J. M. Manning. While there is no direct evidence of this fact, it was agreed that parties claiming under Manning were in possession of the patents and filed the same among the papers in a suit in the Federal Court in 1906 as part of their title papers. It is a reasonable inference from this, and other undisputed facts, that the patent when issued was delivered to Manning or someone for him.

W. C. Blair, to whom it is claimed Keetles conveyed the certificate, was well known in Victoria County, where he lived, and in adjoining counties for many years in the early forties; and John Keetles lived in Calhoun County in 1843 and 1844. He was administrator of the estate of John Gray, the deceased husband of Elizabeth Gray. He and his wife moved from Calhoun County to New York in 1845, and he and his heirs have been nonresidents of Texas since said removal. James M. Manning and his wife, Mary Manning, lived in Victoria County about 1843 and 1844 and removed from there to Corpus Christi. He was living at Rockport after the war, probably about 1868, and died about that time, and his wife died soon after. This agreement as to the death of Manning is not strictly accurate, as he is shown to have executed a deed to Euper to the lots in controversy in 1870.

On June 11, 1855, there was spread upon the records of Calhoun

County an instrument purporting to be a copy of a conveyance signed by John G. Keetles and Mary J. Keetles, his wife, and Elizabeth Gray, to Rev. W. C. Blair, of Victoria, Texas, conveying three land certificates—one issued to John Gray for 640 acres; one to Elizabeth Gray for 320 acres, and the third issued to John Keetles for 640 acres, being the certificate here in controversy. The original, of which the copy was recorded, purported to have been acknowledged by all of the parties before Sam R. Betts, Judge of the United States for the Southern District of New York, on September 13, 1845. This certificate of the judge and also of the clerk as to the genuineness of the signature of the judge was recorded with the deed, as is also a certificate of J. Beaumont, Chief Justice of Calhoun County, under the séal of the County Court, that the copy is a true copy of the original conveyance and certificates thereto attached. On July 24, 1867, a copy of this recorded copy was also spread upon the records of Refugio County, in which county the land in dispute then lay. By deed dated October 19, 1849, W. C. Blair, for the consideration of $60, conveyed to James M. Manning the headright certificate for 640 acres issued to John Keetles, being the same in controversy. This deed was recorded in Refugio County October 28, 1867, and afterwards in Aransas County, date not shown.

The certificates were located in two surveys of 320 acres each, on one of which the land in controversy is located, and the surveys were made for James M. Manning, assignee. The surveys were filed in the General Land Office by Manning, as was also the conveyance of W. C. Blair to him, which latter was withdrawn from the Land Office, Aguust 10, 1867, by C. R. Johns & Co., who are shown by circumstances to have been acting for Manning, and the patent was delivered September 12, 1867, to Flan. Everett, a member of the firm of C. R. Johns & Co. As this patent was afterwards in possession of Manning's vendees, the reasonable inference is that it was delivered to Everett for him. Manning had the land platted into lots and blocks as Manning's addition to the town of Rockport, the exact date of which is not shown, but at some date prior to 1869; and in 1870 sold and conveyed blocks 6, 7, 18, 19, being those in controversy, to Jacob Euper. Euper was to construct a wharf on the property. In 1870 he conveyed to Ackroyd one-half interest. In 1871 Ackroyd conveyed to J. W. Stockley his interest. In 1871 Euper conveyed to Stockley his remaining half interest. In 1873 Mary Manning recovered a judgment in the District Court against Euper and Stockley, with foreclosure of vendor's lien on these lots, under which they were publicly sold and conveyed to E. G. Stockley. In 1885 J. W. Stockley conveyed the lots to J. W. Clearman and in 1887 E. G. Stockley also conveyed to Clearman.

There has been open and notorious assertion of title and ownership of the land by Manning and those claiming under him, beginning in 1867, the date of the patent, or 1868, down and continuing to the present time. They have paid all taxes that have been assessed against the land, as and when the same were assessed, except the water front, paying the tax on that for 1891, 1894, 1896 and 1897. Much of the time Manning and those claiming under him have been

in actual possession of the land. About 1868 or 1869 a house was built on lot 6, in which Manning lived for a time. A packery was built on block 7, which was operated for several years by Euper & Co., and there has been at all times open and active assertion of ownership based upon the conveyance of the certificate by Keetles to Blair and mesne conveyances thereunder.

John Keetles died in 1881, his wife died in 1873. Elizabeth Gray, W. C. Blair, Sam R. Betts and J. Beaumont died more than thirty years before the institution of this suit. Manning died about 1870 and his wife a few years afterwards. In 1895 the heirs of John Keetles, by special warranty deed, conveyed the lots in controversy to Henry W. Allen. Neither John G. Keetles nor his heirs, nor anyone claiming under them (other than those claiming under Manning) have ever paid any taxes on the land or otherwise asserted any claim or title, or by any act indicated any claim to the same until the execution of the deed by the heirs of Keetles to Allen in 1895, although Keetles lived until the year 1881. Allen and his grantees, plaintiffs herein, are and have always been nonresidents of the State. Diligent search has been made without success for the original transfer from Keetles to Blair, and also for the original deed from Blair to Manning. The office of C. R. Johns & Co. was destroyed by fire in 1883. Neither the above transfers, nor any other paper connected with the title, could be found after diligent search among their papers which were saved from the fire. It was also shown that the adjoining 320 acres was also surveyed for James M. Manning, substantially in all respects as the one in controversy.

This array of facts speaks for itself. It shows a consistent claim beginning with Blair when he sold and conveyed the certificate to Manning October 19, 1849, taken up by Manning in having the surveys made for himself as assignee of the certificate in 1867 (and he must have then had possession of the certificate), in returning the certificate and field notes of the survey to the General Land Office and procuring the patent for the land; all of these different acts following in consecutive order, in taking actual possession of the land, erecting improvements, paying taxes, selling the same, his purchaser also erecting valuable and extensive improvements, all in due and orderly succession, beginning in 1849 and continuing until the present time. On the other hand, Keetles, although he lived until 1881, never at any time asserted any claim to the land, nor did his heirs ever assert any claim until they sold and conveyed the lots in controversy by special warranty deed to Allen in 1895. And in connection with all of this we find Manning, who had bought from Blair in 1849, or someone in his interest, placing upon the records, first of Calhoun County in 1855 and afterwards of Refugio County in 1867 (the same year the Blair deed to Manning was recorded in that county and a few months thereafter), the copy of the deed from Keetles and Mrs. Gray referred to. It will be noticed that in this array of facts we have not included the evidence furnished by the objectionable letter from Manning to the Land Commissioner.

There is but one reasonable explanation of these combined facts. By their combined force we are driven to the conclusion that the

claim of Blair and Manning, evidenced by their open and public acts, that Keetles had sold the certificate to Blair was an honest claim, and this in spite of what appear to us now as irregularities in the manner of transacting the business, easily explainable by the general loose way in which people at that date dealt with transfers of land certificates.

Although Keetles was a nonresident, he knew that this certificate had been granted to him. It is possible, but not reasonable in view of all the evidence, to suppose that Blair got possession of it in some way without any conveyance from Keetles, and that the conveyance or copy thereof recorded in 1855 was a fraud, but the loose way in which this was done does not look that way to us. Any person going about to perpetrate a fraud of this kind would have had the purported original instead of a purported copy recorded. If Manning was fabricating such an instrument, why should he have included the Gray certificates in which he had no interest?

The court properly charged the jury, and no complaint is made of the charge, that if they believed from all the circumstances in evidence it is more reasonable to presume that Keetles did in fact convey or transfer the certificate to Blair than that he did not; or that it was more probably true that Keetles did convey it to Blair than that he did not, they would be authorized to presume that he did so. If the evidence does not authorize a peremptory instruction to find for the defendants, it certainly stops just short of that point and is of such a character that no court should permit a verdict against it to stand. In such case should we reverse the judgment on account of the error committed in submitting the issues of limitation? Is it conceivable that the jury, in the face of the clear and palpable lack of even sufficient evidence in support of that issue to authorize its submission to the jury and of the convincing evidence upon the issue of the transfer of the certificate by Keetles, left the broad highway thus pointed out to them to follow the blind trail of the limitation title? We think it is entirely clear that they did not, and that their verdict was not, could not have been, affected by the charge on limitation. It was held by the Supreme Court in the late case of Dallas Elec. Street Ry. Co. v. Chase, 103 Texas, 317, in substance, that where the court submitted an issue (as to the manner in which the accident occurred) that was not raised by the pleadings, and as to which there was no evidence, there being distinct evidence that plaintiff was injured as charged in the petition, the charge was not prejudicial, it being very improbable that the jury was misled by it. To the same effect is the holding by this court in Houston & T. C. Ry. v. Shapard, 54 Texas Civ. App., 596 (118 S. W., 599).

For these reasons we do not think that the judgment should be reversed for the errors in the charge. As we have endeavored to show, the error as to admission in evidence of the letter referred to in the fourth assignment was harmless in view of other evidence. Our conclusion is that the judgment should be affirmed and it is so ordered.

*Affirmed.*