## DE RAMIREZ et al. v. DE RAMIREZ et al.

### No. 8462.

Court of Civil Appeals of Texas. San Antonio.

June 18, 1930.

W. W. Winslow, Gordon Gibson, and W. R. Blackshear, all of Laredo, for appellants.

Mann, Neel & Mann and N. A. Rector, all of Laredo, for appellees.

COBBS, J.

This suit was filed by appellants against appellees to recover a certain tract of land situated in Zapata county, but by agreement the suit was transferred to Webb county district court, where it was finally tried. The case has been elaborately briefed and was argued orally.

It was alleged:

"(a) That plaintiffs and defendants are the joint owners in fee simple of Porcion 5, Zapata County, Texas, which land was originally granted by the Crown of Spain to Jose Luis Ramirez.

"(b) That such land was community property of said Ramirez and his wife, Basilia Martinez, neither of whom were ever married except to each other, and to whom ten children were born.

"(c) That said Jose Luis Ramirez died intestate in the year 1819 and that after his death his estate was partitioned and Porcion 5 was set aside to his widow.

"(d) That on or about January 1, 1844, his widow died testate and her will was probated in Guerrero, Mexico, about January 12, 1844, 'in which will her ten children were named as her devisees.

"(e) That one of these ten children, namely, Pedro Ramirez, predeceased his mother and left surviving him as his sole heir his minor son, Jose Maria Ramirez, the father of the plaintiffs.

"(f) That no administration was ever had upon the estate of said Basilia Martinez in Texas, nor was any record ever made in Texas of the proceedings in Guerrero, Mexico.

"(g) That the independent executors named in such will in the year 1860 attempted to deed Porcion 5 to one of such executors, to-wit: Manuel Ramirez, in which deed it was recited that sale of said Porcion had been made long prior thereto. That such deed was recorded in Guerrero, Mexico, but was not recorded in Zapata County, Texas, and that neither the plaintiffs, nor their ancestor, had any knowledge thereof, active or constructive, prior to January 3, 1928, or that defendants claimed any title or interest thereunder prior to June, 1929. That such deed is wholly void for the reason that it was an attempt by executors and trustees holding a fiduciary position to convey trust property to one of their number and an attempt by an executor (whom they alleged to have been guardian of said Jose Maria at that time) to acquire trust property for his own benefit, and that the oral sale purported and represented by such instrument to have been made at a prior time is, and was, from its inception (if made at all), null and void for the same reasons.

"(h) In the alternative, that said deed of 1860 was voidable at their instance, and that if any title passed to Manuel Ramirez, it passed to him as trustee in trust for the benefit of plaintiffs, which trust was never repudiated until some time in the year 1929.

"(i) Plaintiffs prayed as follows: 'That upon trial hereof, they be adjudged and declared the legal and equitable holdings and rights, jointly, of an undivided one-tenth interest in said Porcion 5; that said purported deed or instrument, Exhibit 'A,' be declared void or the defendants declared trustees for plaintiff thereunder as to the one-tenth part of said land, and for judgment for the partition and division of said land, etc.'

"(j) The above mentioned deed was attached to such petition, marked Exhibit 'A.' "

The answer contained general demurrer and special exceptions based on the four-year statute of limitation, stale demand, and laches; general denial. It admitted as be-

ing true the fact that such porcion of land was granted to Jose Luis Ramirez, and the allegations in regard to his wife and children, and partition of his estate, the execution of the will and probate thereof, devisees named therein, the death of Pedro Ramirez, and that Jose Maria Ramirez was the sole heir of Pedro Ramirez, and that plaintiffs were the sole heirs of Jose Maria Ramirez.

Specially denying that plaintiffs had any interest in porcion 5, defendants further alleged as follows:

"1. That immediately after the probate of the above mentioned will the estate of said Basilia Martinez was partitioned among her devisees according to the laws of Mexico. That such partition was executed by each of the adult devisees and by guardian ad litem. for the minor Jose Maria, duly appointed by the proper authorities, and that such partition was approved by the Mexican courts according to the laws of Mexico. That by the terms of this partition, not a single one of such devisees obtained any part of Porcion 5 but said Porcion 5, together with a part of the Mexico porcion, was set aside for the purpose of paying the debts and bequests, and title to same vested in the executors who, under the terms of the will and such partition, had power to sell same, and that they immediately sold and conveyed said Porcion 5 to Manuel Ramirez, either by a parol sale or by a written instrument, but that if such sale was evidenced by a written instrument the same has been lost.

"2. That in the event such partition was not executed according to the laws of Mexico, then that it was the voluntary act of each of the devisees, and that said Jose Maria, upon becoming of age, accepted his share of said estate according to the terms of said partition, which partition in question covered Porcion 5, converted same to his own use, thereby ratifying and confirming the action of his guardian ad litem in making such partition, and that said Jose Maria Ramirez, who lived for a period of seventy years after such partition, continued to ratify and confirm the same as long as he lived, and that Manuel Ramirez and the defendants and their predecessors in title, all of whom are holding under said Manuel Ramirez, relied on such partition at the time they purchased and would not have purchased such land unless they had been relying on such partition, by reason of which an estoppel was created, and further that such partition was a valid oral or verbal partition followed by ratification and confirmation.

"3. Especially denied that Manuel Ramirez was the guardian of said Jose Maria Ramirez at the time he purchased Porcion 5 or at any time prior thereto, but that in all of such proceedings said minor was represented by his guardian ad litem, Francisco Ramirez, and further that subsequent to the purchase of such porcion Manuel Ramirez did become the guardian of said Jose Maria, and in the year 1857 turned over to one Jose Antonio Guellar Gutierrez the entire estate of Jose Maria under the supervision of the Mexican court, said Manuel having resigned as guardian and said Gutierrez having been appointed guardian.

"4. Specially denying that executors or trustees were forbidden by the laws of Mexico or Texas to purchase property in their charge.

"5. That said Porcion 5 was actually sold to Manuel Ramirez in January, 1844, and that the sole purpose of the 1860 deed was to serve as a written evidence of the title acquired by Manuel Ramirez in 1844.

"6. That both Jose Maria Ramirez and the plaintiffs have always had actual notice of such partition and such sale and actual knowledge of the fact that Manuel Ramirez and those holding under him have at all times from the year 1844 had fee simple title to all of Porcion 5, and actual knowledge that from the year 1844 said Manuel Ramirez and those holding under him had been in the actual possession of said Porcion 5, using and enjoying all of it, and erected valuable and permanent improvements thereon, and actual knowledge that it was the general understanding and repute in Zapata County that said Porcion 5 belonged to Manuel Ramirez and those holding under him, in fee simple, and further that neither the said Jose Maria Ramirez nor the plaintiffs ever asserted any claim to Porcion 5 or any part thereof during the lifetime of said Jose Maria Ramirez and for fourteen years after his death or up to the time of the filing of this suit. Neither did they ever render any part of said land for taxation or pay any taxes thereon, notwithstanding the fact that they lived in about ten or fifteen miles of Porcion 5. Further, that from the year 1892 until now the descendants of said Manuel Ramirez and persons holding under him have from time to time executed instruments affecting the title to said Porcion 5, which instruments have been filed for record in the Zapata County Deed Records, and from recitals therein it was apparent that said Manuel Ramirez claimed to have owned the said Porcion 5.

"7. Pleas of stale demand, laches, estoppel, not guilty, and four years' limitation."

Some forty persons, all of whom were claiming under said Manuel Ramirez, were permitted to intervene. These interveners adopted defendants' answer.

At the close of the evidence the defendants and interveners moved the court to instruct the jury to return a verdict in their favor, which motion was granted by the court, and the jury instructed as follows:

"Gentlemen of the Jury: In this case you are instructed by the court that on May 9,

1860, a deed was made by the Executors of Dona Basilia Martinez, conveying Porcion No. 5, in Zapata County, to Manuel Ramirez Martinez.

"The plaintiffs in this case claim an interest in the land as heirs of Dona Basilia Martinez, and their rights in the land, if any they ever had, are concluded by the above mentioned deed, together with the statute of limitation, which has long since barred any action on their part to question the validity of said deed.

"You will, therefore, return your verdict in this case for the defendants and interveners.

"J. F. Mullally,

"District Judge, 49th Judicial
"District of Texas."

In accordance with such instructions, the jury returned a verdict in favor of the defendants and interveners, and the court entered judgment to the effect that plaintiffs take nothing by their suit and that defendants and interveners go hence with their costs without day.

It is undisputed: that porcion No. 5 was granted to Jose Luis Ramirez. That said Jose Luis Ramirez was married only once, and that was to Basilia Martinez, who was never married except to the said Luis. To them ten children were born. Said Luis died about the year 1819 intestate, and his estate was partitioned between his widow and his ten children, in which partition all of porcion 5 was set aside to the widow, Basilia Martinez. Said Basilia Martinez died testate shortly prior to January 1, 1844, and without ever having sold this porcion or any part thereof. Her will was duly probated by the proper court in Guerrero, Mexico, in January, 1844; such court having had jurisdiction by reason of the fact that Texas did not acquire actual jurisdiction of Porcion 5 until 1846. That prior to the death of said Basilia one of her ten children died, namely, Pedro Ramirez, intestate, and left surviving him as his sole heir a minor son, Jose Maria Ramirez, who was some 11 years of age at the time of the death of Basilia Martinez. All of the above and foregoing was pleaded by the plaintiffs and admitted to be true by the defendants.

It is undisputed that the first thing that was done by the Guerrero court when such will was presented to it to be probated was to appoint Francisco Ramirez as guardian ad litem of the minor Jose Maria Ramirez. Thereafter the court named a judge, accountant, and appraisers to inventory, appraise, and partition such estate.

It is very plain that all of said porcion 5 was set aside to pay debts, and that the entire value of such porcion was used for such purpose, and further that that part of the Mexico porcion that was not set aside to said Francisco Ramirez and said Jose Maria Ramirez was also used to pay debts. As well said by appellees in their brief:

"The record in this case clearly shows that the Mexican people of Guerrero around the year 1844, including the judiciary, were not sticklers for formality, nor did they care anything for the technicalities of law. It is plain, however, that they all knew what they wanted to do, and that everything that was done was done in good faith. Otherwise there can be no explanation of the judicial sanction that was given to the entire proceedings, nor to the fact that although over eighty years have elapsed the plaintiffs are the first descendants of Basilia Martinez who have ever questioned the fact that Manuel Ramirez acquired title to the entire porcion in 1844. A mere understanding of these partition proceedings leads to the inevitable conclusion that Manuel not only acquired title to Porcion 5 in 1844, but that each and every one of the devisees had full knowledge thereof and were perfectly satisfied. It is interesting to note that they considered thousands of acres of pasture land as of practically no value, for they appraised a lot in the town of Guerrero with two shacks on it at practically four times what Porcion 5 with its seven thousand acres of land was appraised, and practically five times what the Mexico porcion containing its thousands of acres was appraised, but fortunately we are not confined to presumption created by mere lapse of time, and from the apparent approval of such partition."

Courts do not encourage the filing of suits so many years after the title becomes invested and after so great a lapse of time.

█ Manuel Ramirez acquired a fee-simple title to all of porcion 5 in 1844. The entire estate of Basilia Martinez was partitioned, and porcion No. 5 was set aside to Manuel Ramirez, and confirmed by Jose Maria Ramirez after he became of age. We think the charge was supported by the evidence. Besides plaintiffs were estopped from asserting any claim to porcion 5 by reason of acquiescence in the long possession and claim of title of Manuel Ramirez and those holding under him. The undisputed testimony showed the use and possession of porcion 5 and showed by circumstantial evidence that Manuel Ramirez acquired title from each and all of the devisees of Basilia Martinez.

██ The ruling of the court in admitting the deed of 1860, of which plaintiffs' ancestor had actual knowledge in 1872, was not error. Appellees were in possession and paid all taxes on such land, claiming title, and for a period of over 80 years were undisturbed in such possession and always claimed the title to the land, and ancient declarations made for a period of many years as to ownership are admissible to show a claim to the land as a circumstance of ownership, not-

withstanding they were made in the absence of the defendant, when defendants are relying on circumstantial evidence to prove their title and knowledge on the part of plaintiffs of their claim of title.

On August 12, 1857, said Manuel Ramirez, as guardian of the minor Jose Maria Ramirez, presented a complete inventory of the estate of said minor. This inventory shows an interest in the Mexican porcion of 3 reales and 9 granos, as set out in above-mentioned partition, the 39-peso interest in the Guerrero lot which had been set aside to him in above-mentioned partition in the estate of Basilia Martinez, and the 34-peso interest in such lot, which he had inherited from his father, Pedro Ramirez. Porcion 5 is not included in the inventory.

As said by appellees: "The above and foregoing statement paints a picture of the history of the title of Porcion No. Five from the Government of Spain down to the present date. While it is true that, judged by our standards and requirements in regard to transferring title of real estate, the title to said porcion 5 has been handled and treated in a very informal manner, still it is perfectly clear from the above and foregoing statements that the same has been handled in entire good faith and that it was bought and paid for by Manuel Ramirez in 1844, and that he, and those holding under him have been in actual possession thereof from that time until now."

The trial court could not have done other than instruct a verdict for the defendants under the authority of the case of Hinnant v. Rodriguez (Tex. Civ. App.) 255 S. W. 1000. The facts in the Hinnant Case are very similar to those of the instant case, in that the plaintiffs were minors back in 1881 when the estate of their father was partitioned; such minors having been represented by some other member of the family. The estate consisted largely of real estate, but for some reason the two minors were given no interest in the real estate, but there was set aside to each of them several hundred sheep. The trial court in that case rendered judgment in favor of the plaintiffs, holding that the attempted partition of 1881 was invalid and that it was insufficient to divest title of the minors in the real estate. On appeal, this honorable court reversed and rendered, holding the partition to have been a valid and binding one in view of plaintiffs' acquiescence in a partition for over 85 years, a partition in which the minor was represented by duly appointed guardian ad litem, and the partition was had under the supervision of a court of competent jurisdiction, and a partition which was unquestionably fair and just to the minor. It is a question of fact for the jury. Miller Vidor Lumber Co. v. Schreiber (Tex. Civ. App.) 298 S. W. 154; Fowler v. Texas Exploration Co. (Tex.

Civ. App.) 290 S. W. 818; Fletcher v. Fuller, 120 U. S. 534, 7 S. Ct. 667, 30 L. Ed. 763; Grayson v. Lofland, 21 Tex. Civ. App. 503, 52 S. W. 123; Hutchison v. Massie (Tex. Civ. App.) 226 S. W. 700; Brewer v. Cochran, 45 Tex. Civ. App. 179, 99 S. W. 1033; Buvens v. Brown (Tex. Com. App.) 290 S. W. 1089; Herndon v. Burnett, 21 Tex. Civ. App. 25, 50 S. W. 581; Frugia v. Trueheart, 48 Tex. Civ. App. 513, 106 S. W. 736.

Unquestionably the testimony supports a finding that Santiago Vela acquired title from the devisees of Basilia Martinez and that Manuel Ramirez acquired title from him. Miller-Vidor Lumber Co. v. Schreiber, supra. Ordinarily this is a question of fact for a jury, but, in the protection of titles of persons who had long possession, we feel under the peculiar facts in this case it is a question for the courts to pass upon.

■■ Evidence need only lead to the conclusion that the grant might have been executed. Fowler v. Texas Exploration Co., and Miller-Vidor Lumber Co. v. Schreiber, supra. A removal of all reasonable doubt is not essential. Brewer v. Cochran, supra. Only a fair probability of the existence of such title need be proved. Grayson v. Lofland, supra. If the circumstances are consistent with the presumption that a sale or deed was made and, in view of the circumstances, it is more reasonable to believe that such a sale or deed was made than that it was not made, the jury are at liberty to presume and find that it was made. Herndon v. Burnett and Frugia v. Trueheart, supra. It is sufficient if the evidence leads to the conclusion that the conveyance might have been executed and that its execution would be a solution of the difficulties arising from its nonexecution. Fletcher v. Fuller and Hutchison v. Massie, supra.

■■ We do not think the sale and purchase of the land was void. Nabours v. McCord, 97 Tex. 526, 80 S. W. 598. It makes no difference whether the sale was at public auction, if it was bona fide and for a fair price. However remote from the main issue in point of time, a fact, if relevant and tending to explain the main issue, should go to the jury in a case like this.

The testimony is very lengthy, but we think we have covered, with some copying, the material issues. The issues fully support the findings of the court.

After so long a time and lapse of years, it would require more testimony than here shown to disturb the finding and decision of the careful and learned trial judge who tried this case.

Being satisfied that the case was fairly and honestly tried, and no reversible error being apparent, we affirm the judgment.