**DUKE et al. v. HOUSTON OIL CO. OF TEXAS et al.**

**No. 3440.**

Court of Civil Appeals of Texas. Beaumont.

May 1, 1939.

Rehearing Denied May 10, 1939.

W. S. Parker, Thos. J. Baten, Gordon Baten, and W. D. Gordon, all of Beaumont, for appellants.

Williams, Lee, Sears & Kennerly and Sam R. Fisher, all of Houston, for appellees.

O'QUINN, Justice.

On August 10, 1836, the Republic of Texas issued Land Certificate No. 420 to Samuel M. Williams, who on February 20, 1837, by an instrument in writing, transferred same to James Henderson. James Henderson, by an instrument in writing, on March 21, 1837, transferred this certificate to George Ryan. Under and by virtue of this certificate, on March 7, 1840, 640 acres of land in Hardin County (then in Jefferson County) were surveyed for George Ryan. This survey was approved as correct by A. H. Delano, County Surveyor of Jefferson County, on November 22, 1840. On August 19, 1841, George Ryan executed to James Henderson the following instrument:

"Whereas James Henderson did bargain and sell transfer and assign unto George Ryan a certain Section of land, containing six hundred and forty acres, as per certificate No. 420 granted and sold by the Government of Texas to the said James Henderson, as will more fully appear reference thereto being had; Now this Indenture witnesseth that the said George Ryan for and in consideration of the sum of one dollar to him in hand paid the receipt whereof is hereby acknowledged, hath and doth by these presents bargain and sell, retransfer and convey unto the said James Henderson his heirs and assigns, all the aforesaid section of land, situate in Texas, and doth hereby authorise the said James Henderson or his Attorney to cancel or erase if necessary, the said conveyance and transfer of the said section of land so made by the said James Henderson to the said George Ryan, so that

it may be located in the name of the said James Henderson, and to do any other act required for the effectual location of said section of land.

"In witness whereof we have hereunto set our hands and seals this nineteenth day of August, A. D. one thousand eight hundred and forty one.

"George Ryan        (LS)
"James Henderson    (LS)"
"Witnesses
"Jas. H. Wilson.
"Jas. A. Mason."

This instrument was proved up by the witness James A. Mason, and filed for record and recorded on July 3, 1848, in Jefferson County, Texas. This was seven years after its execution, and eight years after the land was located under the certificate for George Ryan, and six years after the patent had been issued to George Ryan.

Patent was duly issued by Sam Houston, President of the Republic of Texas, to George Ryan to the land, on February 26, 1842. (This was after the transfer of the certificate by Ryan to Henderson.) The patent was on field notes identical with those of the survey made for George Ryan in locating the land November 22, 1840.

This was a suit by Laura S. Duke, et al., appellants, claiming under James Henderson, to recover an undivided interest of 200 acres in the George Ryan 640 acre survey above mentioned. Judgment was rendered, on an instructed verdict, against appellants in favor of appellees, Houston Oil Company of Texas, Republic Production Company, and Southwestern Settlement & Development Corporation claiming under George Ryan. All other defendants were dismissed from the case.

Appellants offered in evidence to establish their claim to the land, the following chain of title: (a) The instruments mentioned above; (b) will of James Henderson, deceased, dated November 28, 1844, and probated September 5, 1845, in Philadelphia County, Pa., but never recorded in Hardin or Jefferson County, Texas, which devised to his sister, Maria Theresa Henderson, all his estate "real, personal and mixed whatsoever and wheresoever." In the court probating the will, George Ryan and F. A. Ryan on said September 5, 1845, filed an inventory and appraisement of the property of said estate of James Henderson, deceased, and inventoried "2½ tracts

of lands in Texas." (No description of the lands was given); (c) a series of eight or more wills all of which were probated in Pennsylvania—none of them ever probated or recorded in Texas. Through these wills appellants claim the land in controversy, as under James Henderson, deceased. Neither in James Henderson's will, nor in any other of the wills was there any reference whatever to the George Ryan survey of 640 acres of land in Hardin County. Appellants simply claim this land under the general description as "part of the estate" of the testators.

Appellants filed this suit on July 2, 1937. So far as the record discloses, this was the first time they asserted any claim of title to the land since the execution by George Ryan to James Henderson of the instrument (set out above) dated August 19, 1841, and its record in Jefferson County, July 3, 1848; an absolute non-claim of some ninety years.

Appellees claim through the following chain of title: (a) All the instruments set out in appellants' chain of title; (b) deed dated December 26, 1888, from the heirs of George Ryan, to wit: George J. Ryan, Charles A. Ryan, and Mary Cecilia Ryan, of Union County, New Jersey, conveying the entire 640 acres to S. C. Olive and J. A. Sternenberg (George Ryan, to whom the land was patented, died in the City of Philadelphia on July 27, 1851); (c) deeds dated in 1889, 1896, and 1899, conveying the Olive-Sternenberg title to G. A. Sternenberg; (d) regular chain of title from G. A. Sternenberg to Olive-Sternenberg Company, and from Olive-Sternenberg Company to J. H. Kirby by deed dated January 8, 1901, and from J. H. Kirby to Houston Oil Company of Texas by deed dated September 23, 1906; (e) the abstract of title to the George Ryan 640 acres of land contains forty-eight separate instruments of transfer and mortgage subsequent to the deed from the George Ryan heirs to Olive and Sternenberg in 1888. Appellees all claim under and through this chain of title.

Beginning with 1904 and continuing through 1936, appellees and those under whom they claim, paid the taxes on the George Ryan 640 acre survey each and every year before delinquency, except for the year 1925, when the taxes were paid on April 12, 1926. The taxes for 1902, were paid April 18, 1903, and for 1903, the taxes were paid in 1904. The case was tried on an agreement that all the taxes from 1904 to 1936, inclusive, were paid before delinquency; however, the agreement referred to an itemized exhibit, which on its face shows that the taxes for 1925 were not paid (April 12, 1926) until after they became delinquent. Neither party knew of this fact until after judgment was rendered and entered. The record discloses, affirmatively, that appellants, nor those through whom they claim, have ever at any time paid any taxes on the George Ryan 640 acre survey, and as stated above, they have not been in possession of the land, nor made any claim thereto since the execution of the conveyance by George Ryan to James Henderson on August 19, 1841.

The parties made the following agreement: "It is stipulated by the parties that since the Houston Oil Company of Texas got the deed to the land offered in evidence (dated September 23, 1903) that it and the other defendants with it who claim the land have several times each year cruised and inspected the land together with additional very large acreage of land claimed by them throughout this section of the state for the purpose of preventing depredations and other matters of that kind and that twice since 1903 the Kirby Lumber Company has cut the timber from the land under its purchase of the timber from the Houston Oil Company, but that no entry for the purpose of cutting timber lasted more than a few months."

■ James Henderson transferred land certificate No. 420 to George Ryan on March 21, 1837. Under and by virtue of this certificate, on March 7, 1840, 640 acres of land in Hardin County (then in Jefferson County) was surveyed for George Ryan. This survey was approved as correct by A. H. Delano, County Surveyor of Jefferson County, on November 22, 1840. For a recited consideration of one dollar, and that the land might be located in the name of James Henderson, George Ryan transferred the certificate back to James Henderson, on August 19, 1841. This instrument was recorded in Jefferson County July 3, 1848. Patent from the Republic of Texas, was issued to George Ryan for the land, February 26, 1842. Appellees did not offer in evidence a transfer of the certificate by Henderson back to Ryan, and the record shows that they did not have such a transfer in their possession, and that such a transfer is not of record in either Jefferson or Hardin Coun-

ties. But it is our conclusion, on the facts as stated above, that the trial court was justified, as a matter of law, in presuming that the title to the George Ryan survey was transferred back by James Henderson to George Ryan. On that presumption it was the duty of the trial court to instruct the jury to return a verdict in favor of appellees.

It conclusively appears the Henderson heirs did not know of any claim in them to the George Ryan survey until a short while before this suit was filed, July 2, 1937. They claimed through a series of wills, and it appears conclusively that the testators, with the possible exception of James Henderson, did not know anything of this claim to the land. James Henderson's will was probated, September 5, 1845. In his will he made no reference to the George Ryan survey, but willed his estate to his sister in the most general terms. The inventory of his estate did not disclose that the George Ryan 640 acre survey was a part of his assets. This, though George Ryan was one of the appraisers of the estate, and must have had intimate knowledge of the existence and location of said land, because it had been patented to him some three years before, made no mention of it in executing and filing the inventory. As before stated, though George Ryan had transferred the certificate back to James Henderson for the nominal consideration of one dollar, and the recited purpose that the land might be located in the name of James Henderson, yet, in fact, on the same field notes of date March 7, 1840, by which the survey was located for George Ryan, it was, on February 26, 1842, patented to George Ryan.

The record discloses that the Henderson heirs and the Ryan heirs lived in the City of Philadelphia, Pennsylvania, and that they were intimate friends and closely related. The record further shows that at all times since the death of James Henderson, his heirs claiming through him, have lived, and have probated a long series of wills in the City of Philadelphia. Sometime prior to 1888, the Ryan heirs moved from the City of Philadelphia, Pennsylvania, to Union County, New Jersey. With the record title before them—and it is our conclusion that all parties dealing with the title to the George Ryan survey were visited with notice of all the instruments referred to above—in 1888, the George Ryan heirs, living in Union County, New Jersey, executed their general warranty deed to Olive and Sternenberg, conveying to them the George Ryan survey. There had been no active claim to the land by any of the Henderson heirs or Ryan heirs, by paying taxes or in any other way since 1848, the date of the transfer of the certificate from George Ryan back to James Henderson, and that was years after the land had been located under the certificate for and patented to George Ryan, assignee of the certificate. It is further disclosed by the record that Olive and Sternenberg located the owners after an investigation of the record, and that they had no source of information except as it appeared upon the face of the record—with the information given by the face of the record, and so, we think, the conclusion must be drawn that the investigation was made in Philadelphia, and from that investigation the George Ryan heirs were located. We draw this conclusion from the record because no other source of information is disclosed. Following up their investigation as to the owners of the George Ryan survey, Olive and Sternenberg took title from the heirs of George Ryan rather than from the heirs of James Henderson. We do not deem it necessary to again refer to the evidence of the ownership, dominion and claim of appellees to the land.

In 2 Tex.Jur. page 22, it is said: "In certain circumstances the law indulges a presumption of a grant or conveyance to one who has been in the occupation or possession of land. The rule justifies the finding of the existence of a lost deed, and a consequent completion of a party's chain of title. On an issue as to whether title was acquired by a party's predecessor, it is held that acquiescence by a former owner and his descendants in the possession and assertion of ownership of land on the part of another affords ground for a finding that title passed to the possessor either by deed or otherwise."

In Fowler v. Texas Exploration Co., Tex.Civ.App., 290 S.W. 818, 823, it is said: " 'The law further is that where the fact or deed, as the case may be, which is sought to be presumed, lies back, thirty or more years, and the parties claiming the presumption, or those whose estate they have, or both combined, have during such period openly and notoriously, and with the acquiescence of their adversaries, claimed and exercised acts of ownership over the

land in question, such as might reasonably be expected from owners thereof, and the circumstances in evidence, taken in their entirety, are consistent with the presumption sought to be indulged, and it is more reasonably probable that the facts sought to be presumed existed than that they did not, then the jury are at liberty to presume them and find accordingly.'" Writ was refused.

The presumption of a title is generally one of fact and not of law, and, therefore, subject to rebuttal. 2 Tex.Jur. 26. Under what circumstances may the court, as a conclusion of law on the facts, presume a title? The authorities do not give a clear answer to this question. Even as a fact issue, the answer is attended by great difficulty. We quote from 2 Tex.Jur. page 26: "To the existence of the presumption in question it is essential that proof be made of the fact of acquiescence by the former owner in the adverse claim and acts of ownership; unless this circumstance can be reasonably inferred from the evidence, no grant will be presumed. While possession is not an indispensable prerequisite to the presumption of the existence of a deed, it is essential that the claim of title be made in some tangible form calculated to bring notice to those who are adversely affected thereby, so as to create a presumption of acquiescence in such claim by the adverse parties. And ordinarily where a party asserts a presumed grant, he must show possession, adverse exclusion and a holding to well defined metes and bounds."

The courts are disposed to extend, rather than restrict, the application of the presumption of a deed in favor of one who has been long in adverse, continuous possession of land, claiming it adversely and paying the taxes thereon. Pratt v. Townsend, Tex.Civ.App., 125 S.W. 111. This is also the public policy of this state, as evidenced by Article 5519a, R.S.1925, Vernon's Ann.Civ.St. art. 5519a, which reads:

"In all suits involving the title to land not claimed by the State, if it be shown that those holding the apparent record title thereto have not exercised dominion over such land or have not paid taxes thereon, one or more years during the period of twenty-five years next preceding the filing of such suit and during such period the opposing parties or those whose estate they own are shown to have openly exercised dominion over and asserted claim to same and have paid taxes thereon annually before becoming delinquent for as many as twenty-five years during such period, such facts shall constitute prima facie proof that the title thereto had passed to such persons so exercising dominion over, claiming and paying taxes thereon.

"Sec. 2. This Act shall in no way affect any Statute of Limitation or the right to prove title by circumstantial evidence under the present Rule of Decision in the Courts of this State nor to suits between trustees and their beneficiaries nor to suits now pending. (Acts 1930, 41st. Leg. 5th. C.S. p. 162, ch. 30, as amended Acts 1931, 42nd Leg., p. 288, ch. 169.)"

Weighing the facts on the principles above discussed, and by the authorities, we think the trial court was justified, as a matter of law, in presuming that the title transferred by George Ryan to James Henderson was transferred back to Ryan by Henderson. Every inference in the record supports that presumption, and, as we view the record, there is not a circumstance against it. Appellants offered no evidence to rebut this presumption. As a fact issue, no one could dispute the proposition that the evidence was sufficient to send it to the jury. But on the issue, as in proof of all other issues, where there is no ground upon which reasonable minds can differ, the court, as a matter of law, can draw the conclusion, and so instruct the jury.

In Fowler v. Texas Exploration Company, Tex.Civ.App., 290 S.W. 818, 823, it is said that the rule of presuming a deed or grant might be "more accurately termed proof of title by circumstantial evidence." We take from 17 Tex.Jur. 907, the following discussions of the proof of civil facts by circumstantial evidence:

"Circumstantial Evidence. — Evidence which is termed 'circumstantial' consists in the proof of facts and circumstances which are collateral to the fact that is sought to be established and from which the mind concludes that the main or ultimate fact existed. Generally speaking, any conclusion may be based upon circumstantial evidence; and the fact that evidence is circumstantial does not render it incompetent nor destroy its probative force. Indeed, evidence of this character may be and often is as strong and conclusive as direct and positive evidence."

"The circumstances which amount to sufficient proof of a disputed fact can never

be matter of general definition; and the only legal test of which they are susceptible is their sufficiency to satisfy the mind and conscience of the jury. The jurors are the exclusive judges of the dispute as to whether a fact has been established by the circumstances in evidence. If all the facts and circumstances in evidence, taken together, lead the minds of the jurors to the conclusion that the fact sought to be proved existed, they should so find; and where they have drawn a reasonable deduction from the facts proven, their conclusion must be taken as a fact found although some other hypothesis may be reasonable."

"To establish a fact by circumstantial evidence, the circumstances relied on must have probative force sufficient to constitute the basis of a legal inference; it is not enough that they raise a mere surmise or suspicion of the existence of the fact or permit of a purely speculative conclusion. The circumstances relied on must be of such a character as to be reasonably satisfactory and convincing, or, as it has been said, sufficient reasonably to produce belief of the existence of the fact which is sought to be shown by them. At all events they must not be equally consistent with the nonexistence of the ultimate fact. Where it is sought to prove an ultimate fact by a chain of circumstances, no circumstance should be omitted; every one should be taken and considered."

"The circumstances relied on must be proved by direct evidence; they may not, it seems, exist merely by inference or presumption. No safe conclusion, so it is said, can be deduced from circumstantial evidence if it be left reasonable to suppose that the circumstances themselves are not proven."

"As in other cases, it is sufficient if the fact is established by a preponderance of the evidence; and it is not necessary that the evidence exclude every other hypothesis to be sufficient to remove all reasonable doubt."

Weighing the circumstances reflected by the record in this case by the principles regulating circumstantial evidence, it is our conclusion that the evidence, as a matter of law, established title to the land in controversy in appellees. Every element of proof by circumstantial evidence summarized in the legal principles given above is found in the record in support of appellees' title. However, this conclusion would only send the case to the jury. But, we think,

the evidence goes much further. It excludes every hypothesis except a transfer of the certificate by Henderson back to Ryan, and is sufficient to remove all reasonable doubts of the existence of such a transfer. Therefore, the court properly instructed the verdict. Our conclusion is supported by the policy of our courts to extend and not restrict the application of proof of title by circumstances, where there has been a long non-claim by the plaintiffs and an active possession and claim by the defendants. Also it is supported by the public policy of the State, as reflected by Article 5519a, R.S.1925. Every element required by Article 5519a to support the presumption as a matter of law is found in this case except that appellees were delinquent in paying the taxes for the year 1925—paying the taxes on April 12, 1926, a very short while after the date of delinquency.

Appellees submit the following additional counter propositions which we do not discuss except as they are involved in what we have said:

(a) "The undisputed evidence showing that appellees had openly exercised dominion over and asserted claim to the said George Ryan survey and to have paid taxes thereon annually for as many as twenty-five years during the period of twenty-five years preceding the filing of suit, and the undisputed evidence showing that appellants, if any apparent title they had, had not exercised dominion over said land or paid taxes thereon one or more years during the period of twenty-five years next preceding the filing of suit, the court, under the provisions of Article 5519a was bound to find that the title, if any, of appellants had passed to appellees, when appellants offered no rebutting testimony."

(b) "If the record does not show the payment of taxes by appellees for each year before delinquency during the period of twenty-five years next preceding the filing of suit, the evidence shows the payment of taxes annually and before delinquency for as many as twenty-five years during the period before the suit was filed."

(c) "The wills of Elizabeth Ryan and Mary Ryan, introduced by appellants, dated in 1869, and being identical in the residuary clause, reading: 'and after the decease of the said Elizabeth Ryan, then I give, devise and bequeath the same to my brothers who may be alive at the time of her death, viz Francis A. Ryan, James

Ryan, and Charles Ryan, and to the survivor or survivors of them, share and share alike', create an estate in joint tenancy with survivorship, so that the surviving tenant, James Ryan, took the entire estate, which passed to appellees' predecessors in title."

From what we have said it follows that the judgment should be affirmed, and it is so ordered. Affirmed.

## On Rehearing.

In support of our conclusion presuming as a matter of law the deed from Henderson back to Ryan, in overruling motion for rehearing, we cite the following additional authorities: Clements v. Texas Co., Tex.Civ.App., 273 S.W. 993, 998; De Ramirez v. De Ramirez, Tex.Civ.App., 29 S.W.2d 872; Allen v. Clearman, 60 Tex. Civ.App. 589, 128 S.W. 1140, 1145; Surghenor v. Ducey, Tex.Civ.App., 139 S.W. 22; Baldwin v. Roberts, 13 Tex.Civ.App. 563, 36 S.W. 789.